## STATE v. JACKSON LAMBERT.

*Indictment—Murder—Transcript of Record—Evidence—Challenge to Juror.*

1. The Court to which, on the removal of a cause, the transcript of the record is sent, is the sole judge whether the transcript is properly verified by the seal of the Court from which it is sent, and all other Courts are bound by its decision.

2. When the killing is proved, malice is always presumed, and it is incumbent on the prisoner to show matter in extenuation, unless it is brought out in the testimony offered by the State.

3. When the testimony is conflicting, it is the duty of the jury to reconcile it if possible. If this cannot be done, they must determine which testimony is the most credible.

4. It is not error for the Judge to refuse to charge upon a hypothetical case which does not appear in the evidence.

5. Evidence is not admissible to show that a third party had malice toward the deceased, a motive to take his life, opportunity to do so, and had threatened to do so.

6. A challenge to a juror for cause must be made in apt time. It is too late after the juror has been accepted by the prisoner, and has served on the trial.

7. When the incompetency of the juror is not discovered until after the verdict, it is matter of discretion for the Judge whether he will grant a new trial or not; his refusal to do so is not reviewable.

(*State* v. *Duncan,* 6 Ired., 236; *State* v. *Moses,* 2 Dev., 452; *State* v. *Davis,* 77 N. C., 483; *State* v. *Jones,* 80 N. C., 415; *State* v. *Boone, Ibid.,* 461; *State* v. *Beverly,* 88 N. C., 632; *State* v. *Gee,* 92 N. C., 756; *State* v. *Adair,* 66 N. C., 298; *State* v. *Patrick,* 3 Jones, 443; *State* v. *Greenwood,* 1 Hay., 141, (102); *State* v. *Davis,* 80 N. C., 412; *State* v. *Perkins,* 66 N C., 126; *Spicer* v. *Fulghum,* 67 N. C., 18, cited and approved).

This was an indictment for MURDER, tried before *Gilmer, Judge,* at Spring Term, 1885, of SWAIN Superior Court.

The case, on motion of the prisoner, had been removed from Jackson county to Swain county for trial.

On the trial, one Jones, examined as a witness for the State, testified substantially, that on the evening of the homicide, ten or a dozen persons met at his father's house, which was near a public road, and some of them had liquor, and the most of them were drinking; that he found deceased at the house, apparently under the influence of liquor; that outside of the fence in front of the house, and about seven feet from the gate, there was a wagon bed lying, distant eight or nine steps from the house; that two or three minutes before the homicide, witness saw the prisoner in the wagon bed; the deceased started to leave about dark, and witness accompanied him to the gate to fetch deceased's mule; that getting outside the gate, he and deceased being together, the prisoner who was still in the wagon bed, asked, "who are you?" Deceased answered, " it is us." Prisoner, with an oath, said, "wait until I get my pistol, and I'll show you who 'us' is," and fired. Deceased sat down on the walk, and witness, pausing a moment to see if there would be

any more firing, went on rapidly to the stable, and as soon as he reached the stable, heard another shot fired, went back to where he left deceased, and found him at the same place. He was carried into the house, and it was found that he was shot in the left hip, and he died the next night about two o'clock. Witness swore positively that it was the prisoner who did the shooting; that he recognized him by his voice, and the blaze of the pistol shot.

The State introduced a number of other witnesses, tending to corroborate the witness Jones, and the dying declarations of the deceased.

The prisoner, on the cross-examination of one of the State's witnesses, proposed to prove that the deceased was a revenue officer, and that Bragg Jones, a State's witness, and one of the persons present at the house during the afternoon and night of the homicide, was a dealer in illicit whisky, for the purpose of showing a motive on the part of Bragg Jones to commit the murder charged against the prisoner, the State's witnesses having testified to facts tending to show, that until that day the prisoner and the deceased were strangers to each other, and that evening had been introduced, and took a drink together, and parted apparently in a friendly manner.

The Solicitor objected to the evidence. It was rejected by the Court, and the prisoner excepted.

The prisoner offered himself as a witness in his own behalf; he denied the shooting, and said he was not present when it occurred; and proposed to prove that Bragg Jones was a blockade distiller and prisoner had bought liquor from him, and that evening Jones told him that he was keeping and selling illicit liquor, and would sell prisoner some, if he would keep it a secret from the revenue officers. The evidence was objected to by the Solicitor, disallowed by the Court, and the prisoner again excepted.

It was also in evidence that before deceased left the house, one of the persons present, in going out at the gate, found prisoner lying in the walk, and came near stepping on him, and prisoner got up and went to and got in the wagon bed.

The prisoner asked the following instructions to the jury :

1st. That if the prisoner was there, and they should so find, and fired the fatal shot, from the effects of which Wilson died—(which shot was without motive)—the offence would only be manslaughter, and they should so find.

2d. That if they should find that the prisoner was there, and that there was no malice, though he should have fired the pistol in a heedless and incautious manner, it would only be manslaughter.

3rd. That if the witnesses for the State, by their conflicting testimony, shall leave a reasonable and real doubt on their minds, as to which of them had told the truth; then they should discard their testimony in making up their verdict altogether, and determine the case as if they had not testified.

4th. That if the prisoner was present at the place of shooting, and shot the deceased under the influence of sudden passion, produced by the treading on him while lying on the ground, it would only be manslaughter and not murder.

The Court refused to give these instructions to the jury, and charged them in substance, that the fact of a killing with a deadly weapon being proved or admitted, the burden of showing matter of mitigation is then on the prisoner, unless it arises out of the testimony produced against him. That in this case, it being admitted that the deceased came to his death by a gun-shot wound, at the hands of some one, the jury was to find whether the prisoner did the shooting, and if they were satisfied beyond a reasonable doubt that he did, then there being no matter of excuse offered in evidence, or tendered by the prisoner, who absolutely denied the shooting, it was their duty to find the prisoner guilty of murder.

The jury found the prisoner guilty of murder.

After verdict, prisoner moved for a new trial on the ground of the errors alleged in the exceptions taken on the trial, and on the further ground that one of the jurors who acted in the case, was under twenty-one years of age and not a freeholder.

In the selection of the jury, this juror had been challenged for cause by the prisoner, and examined on his *voir dire*, as to his indifferency, and on being tendered was accepted by the prisoner and sworn as a juror; and after being sworn, and before taking his seat in the jury box, he remarked—loud enough to be heard by the Court and counsel—"My father says I am not twenty-one." But no objection was made to the juror by the prisoner until after the verdict.

The Court refused to grant a new trial, and the sentence of the law was pronounced upon the prisoner, from which he appealed to this Court.

*Attorney General,* for the State.
*Messrs. Reade, Busbee & Busbee,* for the defendant.

ASHE, J., (after stating the case). We have carefully reviewed the record in this case, and find no error.

There was an exception taken by counsel for the prisoner, in this Court, that it did not appear in the transcript of the case from Jackson county to Swain county, where the trial was had, that it was certified under the official seal of the Superior Court of the former county.

The exception is untenable, for it is held, "the Court to which, on the removal of a cause, the transcript of the record is sent, is the sole judge whether the transcript is properly verified by the seal of the Court from which it is sent, and all other Courts are bound by its decision. *State* v. *Duncan,* 6 Ired., 236; *State* v. *Moses,* 2 Dev., 452. The transcript sent to this Court, is but a copy of the transcript from the Court of Jackson to the Court of Swain, and therefore could not have the impression of the seal of the Superior Court of Jackson county.

The Court below committed no error in refusing to give the instructions asked. The first two instructions could not have been given; for where the killing is proved, malice is always presumed, and it is incumbent upon the prisoner to show the

matter in extenuation, unless it is brought out in the testimony offered by the State. This doctrine has been so repeatedly decided by the Court, that it is needless to cite any authority.

The third instruction could not be given, for there is no such rule as that indicated in the instruction. The rule is, when the testimony is conflicting, it is the duty of the jury to reconcile it if possible, and if that cannot be done, then they must determine which testimony is the more credible. But in this case, there does not appear to be any material conflict in the testimony adduced by the State.

The fourth exception is without any evidence to support it. It is not made to appear that the prisoner, while lying on the ground, was trodden upon by any one, much less by the deceased, who did not leave the house until after the prisoner had got into the wagon; so there was no such provocation as that mentioned in the instruction, which could have aroused the passions of the prisoner.

As to the exceptions taken on the trial to the ruling of the Court, in excluding the testimony by which the prisoner proposed to show that Bragg Jones had a motive to kill the deceased, it was clearly not sustainable. In *State* v. *Davis*, 77 N. C., 483, it is held, that "evidence that a third party had malice toward the deceased, a *motive* to take his life and an opportunity to do so, and had made threats against him, and that some time before deceased was killed, he went in the direction of deceased's house with a deadly weapon, threatening to kill him, was inadmissible." *State* v. *Jones*, 80 N. C., 415; *State* v. *Beverly*, 88 N. C., 632; *State* v. *Boon*, 80 N. C., 461; *State* v. *Gee*, 92 N. C., 756. Here there was no evidence proposed to be offered to connect Bragg Jones with the homicide, except that he was a distiller of illicit liquor, and the deceased was a revenue officer.

One of the grounds assigned by the prisoner why a new trial should be awarded him, was the fact that one of the jurors was under twenty-one years of age, and was not a free holder, and the disqualification of the juror was not discovered until after he

was tendered and accepted by the prisoner, and sworn. But it appears that the juror, as soon as he was sworn, and before he took his seat in the box, stated in the hearing of the Court and counsel, that his father said "he was not twenty-one," yet the prisoner made no objection. If he had then moved for leave to challenge the juror for cause, it would have been competent for the Court to allow the challenge; *State* v. *Adair*, 66 N. C., 298. The challenge to a juror for cause must be made in apt time. It is too late, after a juror has been accepted by the prisoner and has served on the trial, to except to him for incompetency. *State* v. *Patrick*, 3 Jones, 443; *State* v. *Greenwood*, 1 Hay., 141 (102); *State* v. *Davis*, 80 N. C., 412.

But when the incompetency is not discovered until after verdict, it is then a matter of discretion for the Judge, whether he will, under such circumstances, grant a new trial; but his refusal to do so, is not reviewable; *State* v. *Perkins*, 66 N. C., 126; *State* v. *Davis, supra; Spicer* v. *Fulghum*, 67 N. C., 18.

There is no error. This opinion must be certified to the Superior Court of Swain county, that the case may be proceeded with in conformity to this opinion and the law of the land.

No error. Affirmed.