## STATE v. ALBERT STARNES.

*Newly Discovered Evidence—Appeal—Bill of Indictment—How Returned into Court.*

1. A new trial for newly discovered evidence cannot be given by the Supreme Court in a criminal action.

2. *Quære*, whether after an appeal and the affirmance of the judgment, the Superior Court can grant a new trial for newly discovered evidence in a criminal case.

3. A new trial will not be granted for newly discovered evidence, when the new evidence is merely cumulative, and only tends to contradict the witness for the other side.

4. No appeal lies from the refusal of a Judge to grant a new trial for newly discovered evidence.

5. Where the record sets out that a bill of indictment was returned into open Court by the hands of the foreman of the grand jury, it sufficiently appears that the grand jurors were present in Court, and the entry is a proper one.

(*Simmons* v. *Mann*, 92 N. C., 12; *Carson* v. *Dellinger*, 90 N. C., 226; cited and approved).

INDICTMENT for rape, heard before *Graves, Judge,* at September Term, 1886, of the Superior Court of UNION county.

The defendant appealed.

The facts fully appear in the opinion.

*The Attorney-General,* for the State.

*Mr. D. A. Covington,* for the defendant.

SMITH, C. J. When this cause was before the Court on the former appeal of the defendant, 94 N. C., 973, and no error was found in the record of which the prisoner could complain, application for an order for a new trial to be had in the Court below, was made upon the ground of the discovery of new and material testimony in favor of the

accused, since the former trial. The motion, so far as our own and the researches of counsel disclose, is without precedent in the administration of the criminal law on appeals to this Court, and so fundamentally repugnant to the functions of a reviewing Court, whose office is to examine and determine assigned errors appearing in the record, that we did not look into the affidavits offered in support of the motion, nor hesitate in denying it.

When the decision was certified to the Superior Court of Union, in order that it should proceed to resentence the prisoner, his counsel, when enquiry was made of him if he had aught to say why judgment of death should not be pronounced against him, at Fall Term, 1886, renewed the application for setting aside the verdict and granting the prisoner a new trial, upon the same grounds, sustaining it by the evidence contained in several affidavits, that of the prisoner himself among them.

The material new testimony, aside from that produced to show the use of due diligence in the preparation of the defence and the procuring of witnesses in its support at the first trial, is contained in the affidavit of Eugenia Moser, a witness summoned and then too ill to be present and whose testimony, her husband, Arch Moser, stated to prisoner's counsel, would be essentially the same as his own, in consequence of which information, the trial was not delayed for her absence.

This affidavit, mainly if not altogether relied on, as bringing the application within the rule that prevails in civil suits, is reproduced in her own words, so far as they are pertinent to the enquiry: " It was about half an hour before 12 o'clock on a Friday night, in November, 1884, when Rosa came to our house, and said that some one had outraged her. She did not tell us who had done it, nor did she accuse any one; said she knew who did it. She also said, 'I have never told you all who did it.'"

The affiant, after mentioning her going to the house of Rosa the next morning, and finding her sitting on the hearth crying, proceeds: "Just then Pomp Belk passed in a wagon. Rosa saw him, and said, 'I believe that negro (pointing to Pomp) is the man who outraged me.' They asked me to see if he had boots on, and said the man who was here last night had boots on."

At a subsequent time when Pomp came to Mr. Moser's house and enquired for him, and then asked to see Rosa, who from fear, would not go out, affiant states Rosa again said: "I believe he is the man who outraged me, for he handles the same words that were handled to me last night. I think he is the man from his voice." In a second affidavit, she states more fully the occurrences of the night when the crime was committed, and described what Rosa then detailed of the circumstances, in these words: "She said that the man who committed the outrage told her he would not hurt her, and said he was the same man who talked to her when she was picking cotton for John Whitley, and he was picking cotton for Billy Steal; that she knew who the man was, but was not going to tell any of us."

Affiant further states, that after Rosa had gone to town for the warrant and returned, John Whitley came to the house of affiant, and said to Rosa, he was afraid she had made a mistake, and taken out the warrant for the wrong man, and that something not understood having been spoken about Pomp Belk and John Dees, she told Whitley to go and have Pomp Belk put in the warrant.

The Court declined to set aside the verdict and re-opened the case, finding as follows:

I. That the newly discovered witness, Eugenia Moser, would testify to the matters set out in her affidavit, and that such matters are most probably true.

II. That this evidence would tend to discredit the prosecutrix, and is material.

III. That the prisoner has used due diligence.

IV. That on the trial, evidence was offered tending to discredit the testimony of the prosecutrix, and the newly discovered evidence is cumulative merely; And

V. That it may probably change the result upon a second trial.

The Court, upon these findings, refused a new trial, in deference to the adjudication of the Supreme Court, that a new trial should not be granted where the additional evidence is merely cumulative and impeaching, and not independent. To this ruling the prisoner excepts, and in answer to the same propounded interrogatory if he had aught further to say why sentence should not be pronounced, moved in arrest of judgment, for that,

I. The record fails to show that the bill of indictment was returned into open Court by the grand jurors as a body; and

II. The record affirmatively states the contrary.

This motion was also overruled, and from the judgment of death pronounced against the prisoner, he appealed.

Without stopping to enquire whether at this late stage in the proceedings, and after an unsuccessful appeal to the Supreme Court upon alleged errors in law, such an application can be entertained in the Superior Court, to whose jurisdiction the cause has been remitted, we proceed, as did the Judge who assumed the right to act upon the application, to consider the case upon its merits, as if made in due and apt time, and to a Court having jurisdiction.

The Judge refused to exercise the invoked power upon a simple legal ground that it was unwarranted by the practice recognized and acted on as a governing rule, which requires the newly discovered evidence to be something more than cumulative, and that this was competent only for the purpose of discrediting the witness, in her identification of the prisoner as the author of the outrage upon her person. It

all tends to show that no reliance can be placed in what she swears about the prisoner, because she first charged the crime upon another. But she had charged the same man, Pomp Belk, in the warrant sued out for the crime, and this was in proof upon the former trial. The new but intensifies the former evidence, that the prosecutrix first accused another party, and this does not seem to have been in any manner contradicted when heard by the jury, and must have been considered by them in determining the credit due to her testimony in identifying the accused, after her conflicting previous statements.

Not only is the proposed evidence directed to the impairment of confidence in her sworn recognition of the criminal, but it is also of the same character and but a repetition of what was before shown. The present are her declarations made soon after the outrage, and in the confusion incident to its perpetration, and before they were embodied in the more solemn form of suing out a State warrant and charging the crime upon another.

Not only does the proposed proof assail the integrity or memory of the witness, or both, but it is confined to the very same point, and not more forcible than that before adduced. It is therefore only cumulative, and to the same point. The law was properly declared by the Court as regulating the practice in similar applications in civil cases.

" It is a well settled rule of law," (we quote from the opinion of MERRIMON, J., delivered for the Court in *Simmons* v. *Mann,* 92 N. C., 12,) " that a new trial will not be granted upon the ground of newly discovered evidence, if this evidence is merely *cumulative* (the italics are in the opinion), or in corroboration of evidence received on the former trial in respect to a particular point, or in support of a particular allegation." See cases cited.

Moreover, the granting or refusing a new trial for such cause, is the exercise of an unreviewable discretion in the

Judge, as decided in *Carson* v. *Dellinger*, 90 N. C., 226, where the practice is fully discussed.

While in this case, the Judge puts his refusal upon the ground that the case made does not come up to the rule in one essential particular, he does not abnegate the power to make the order when all its requirements are met, and this in the pending application, and there is no error in law in his ruling.

The motion in arrest of judgment, based upon the manner of returning the bill into Court, though not specifically mentioned in the opinion in the former appeal, is necessarily disposed of in the concluding declaration of this Court, "that there is no error in the record." But if it had been, the motion finds no support in the record, which says, "which said bill of indictment the jurors aforesaid, on the 7th day of April, 1885, it being Tuesday of the first week of the term of the Court, returned into open Court by the hands of J. M. Ferrell, their foreman." This language is not reasonably susceptible of the interpretation put upon it by the prisoner's counsel. It is explicit that the grand jurors themselves were present and returned the bill, and that their foreman, in their behalf, and by their assent, handed in the bill, and this is the usual and proper practice. There is no error.

We deem the occasion a proper one to speak of the zeal, ability, and persevering energy with which the prisoner's defence has been conducted by counsel assigned by the Court, and without fee, and the assurance which professional devotion to duty gives, that justice will be impartially administered to all, irrespective of their means or condition in life, in our Courts.

No error.                              .                    Affirmed.