## THE STATE v. LUCIEN ROWE.

*New Trial—Burglary—Apprentice—Evidence—Witness—Requests for Special Instructions—Jurisdiction.*

1. The jurisdiction of the Supreme Court in respect to granting new trials for newly discovered testimony is confined to civil actions.

2. A witness whose testimony has been impeached may be corroborated by showing that he made statements substantially similar to those on his examination, at other times; and he is himself competent to prove those statements.

3. It is competent to show that a person charged with a crime made false and contradictory statements in reference to it.

4. If one gains entrance into a dwelling-house in the night time by a trick, fraud or by conspiring with a servant of the occupant to be admitted, with the intent to commit a felony, it is a constructive breaking and he will be guilty of burglary. An apprentice is a servant, within the rule.

5. Requests for special instructions are required to be in writing, and they should be presented in time to give the Court opportunity to consider them before submitting them to the jury.

(*State v. Miller*, 97 N. C., 484; *State v. Holland*, 83 N. C., 624; *State v. Hurdin*, 2 D. & B., 407; *State v. Haney*, Ibid., 390; *State v. Ludwick*, Phil., 401; *State v. Swink*, 2 D. & B., 9; *State v. Broughton*, 7 Ired., 96; *State v. Whitfield*, 92 N. C., 831; *State v. Parish*, 79 N. C., 610; *March v. Harrell*, 1 Jones, 329; *State v. Jones*, 69 N. C., 16; *State v. Starnes*, 94 N. C., 973, cited).

This was an INDICTMENT for burglary, tried before *Phillips, Judge,* at Spring Term, 1887, of DURHAM Superior Court.

The defendant was convicted, and from the judgment thereon pronounced against him he appealed.

The facts are stated in the opinion.

*The Attorney General,* for the State.
*Mr. W. A. Guthrie,* for the defendant.

DAVIS, J.  The principal witness against the prisoner was one Mary Castleberry, and he moves for a new trial in this Court, upon the ground that his conviction was procured by her false testimony.

The motion is based upon the affidavit of the said Mary Castleberry, to the effect that her testimony on the trial was false in every material particular and was induced by causes set out in the affidavit; and the affidavit of the prisoner that the term of the Superior Court, at which the trial was had, expired before he had any knowledge or information of the fact upon which the motion is based; and that the affidavit of Mary Castleberry was without his procurement, and, in fact, that he had no knowledge that such an affidavit would be made until informed by his counsel, and could not avail himself of it in the Court below.

The able counsel, who so faithfully represented the prisoner, admits that the motion cannot be allowed without a reversal of the rulings of this Court heretofore made, but he earnestly insists that we shall review and reverse those rulings.

Upon careful consideration we must adhere to the principle, judicially settled, that in criminal actions the appellate jurisdiction of this Court is limited to a review and correction of errors in law committed in the trial below.  *State* v. *Jones*, 69 N. C., 16; *State* v. *Starnes*, 94 N. C., 973.

The application is based upon the affidavit of a witness who was an accomplice, and who now makes oath that her testimony on the trial was false.  How far the jury might have given credit to her testimony, impeached as it was, but for the corroborating facts and circumstances, we cannot determine, but the Executive is invested with the pardoning power, and has the discretion not only to consider facts that may be made to appear after the trial, of which the jury could have no knowledge, but to review and consider all the facts, and the extreme injustice and wrong which may often result from a refusal of this Court to assume the discretionary

power, so earnestly pressed upon us by the learned counsel, can find a remedy there.

The preliminary motion cannot be allowed, and we proceed to consider the errors assigned in the record.

The indictment, in different counts, charges:

1st. That the defendant, in the night of October 15th, 1886, feloniously and burglariously did break and enter the dwelling-house of Samuel A. Thaxton, situate in the county of Durham, &c., and did feloniously and burglariously steal sixty dollars, the property of Samuel A. Thaxton.

2d. That he feloniously, burglariously, &c., entered the dwelling-house of Eva C. Thaxton, &c., and did steal, &c., sixty dollars, the property of Eva C. Thaxton, &c.; and,

3d. That he feloniously, burglariously, &c., entered the dwelling-house of Eva C. Thaxton, and did steal sixty dollars, the property of Samuel A. Thaxton, &c.

1. Mary Castleberry, a witness for the State, was impeached upon the cross-examination, and upon such examination had testified that she had gotten money for the prisoner before; that in January, 1886, the prisoner told her to get $1.75 from Mrs. Thaxton, and that she got the money from Mrs. Thaxton for the prisoner, but was caught in the act of stealing it, and it was taken from her by Mrs. Thaxton. With a view of corroborating this witness, the Solicitor asked S. A. Thaxton, a witness for the State, whether she had made any statement to him about her relations to the prisoner, as testified to by her. The witness was permitted to answer, under objection by the defendant, that she had made a statement, which, as given by the witness, was substantially that given by her.

The witness, Mary Castleberry, was impeached, and it was competent to support her by proving that she had made consistent statements at other times. It was competent, not as substantive evidence, but only to corroborate her. *State* v. *Parish,* 79 N. C., 610; *March* v. *Harrell,* 1 Jones, 329.

Even the witness impeached may testify as to consistent statements previously made. *State* v. *Whitfield*, 92 N. C., 831.

2. Mary Castleberry had testified, on cross-examination, that for three years she had been the kept mistress of the prisoner, and that he had frequently visited her on the Thaxton premises. With a view of corroborating her, S. A. Thaxton was asked if she had made any statements to him about the prisoner coming on his premises, as testified to by her. The witness was permitted to answer, under objection by the defendant, and gave the statement of the witness made to him, to the same purport as that testified to by her. This was competent, for the same reason and for the same purpose as the preceding evidence.

3. C. B. Green, a witness for the State, testified that he was the committing magistrate before whom the preliminary examination was had; that upon that examination the prisoner was cautioned and informed of his right to refuse to answer; that "after this caution had been given, and after Thaxton had testified that he had lost sixty dollars, the prisoner voluntarily offered himself as a witness on his own behalf. The defendant objected to witness testifying to what prisoner testified to because there was no evidence of any identification of the sixty dollars." The witness testified, under objection, that on the examinati n the prisoner swore that in October he had sixty dollars, which he had borrowed of Warren McCauley, of Alamance County.

The witness, S. A. Thaxton, was permitted to state, under objection by the defendant, to the same statement made by the prisoner. To show that the statement made by the prisoner as to how he came into possession of the sixty dollars, the State introduced Warren McCauley, who testified, under objection, that he never loaned the prisoner any money and that he lived in Alamance County.

The objection cannot be sustained. It was competent to show that the prisoner had made false or contradictory

statements in regard to the substantive matter of the crime with which he was charged. *State* v. *Conrad*, 95, N. C., 666.

In the *State* v. *Broughton*, 7 Ired., 96, the prisoner was charged with murder; the foreman of the grand jury was offered as a witness for the State to prove that the prisoner was a witness before the grand jury, and that he charged another with the murder of the deceased. The evidence was admitted, "not," said Chief Justice RUFFIN, "as a confession, but as a false accusation against another, and thus furnishing, with other things, an argument of his own guilt."

So in the *State* v. *Swink*, 2 D. & B., 9, Judge GASTON delivering the opinion, it was said, "that all the surrounding facts of a transaction may be submitted to the jury when they afford any fair presumption or inference as to the question in dispute. Upon this principle it is that the conduct of the accused at the time of the offence, or after being charged with it, such as flight, the fabrication of false and contradictory statements, the concealment of the instruments of violence, the destruction or removal of proofs tending to show that an offence had been committed or to ascertain the offender, are all reviewable in evidence as circumstances connected with, and throwing light upon, the question of imputed guilt."

In *State* v. *Ludwick*, Phil., 401, the prisoner was charged with the murder of his wife, and "among various contradictory accounts which he gave of his wife's disappearance, said that his father had shot her." On saying this at one time in the presence of the father, the latter indignantly denied it. The prisoner objected to the evidence of what the father had said, but it was received by the Court.

The evidence of the "various contradictory accounts" seems to have been received without question, as a matter of course, and such, I think, is the common practice on the circuits. This applies to, and disposes of, the several excep-

tions to the evidence in regard to the declarations and contradictory statements of the prisoner.

4. It was in evidence that Mary Castleberry was bound as an apprentice to S. A. Thaxton, and that the prisoner, in pursuance of a preconcerted arrangement with her, had gained admission to the house in the night through a door opened by her.

Counsel for the prisoner asked the Court to give the following instructions to the jury: "That if a dwelling-house is left open by the occupants, and a thief enter by the opening (such as a door, which is the usual mode of entering such house,) and open a trunk and steal therefrom, it is not burglary; nor is it burglary if, after the family have retired for the night, one of the family should open the door to admit the thief, and thus gaining admission, he should open a trunk and steal therefrom. That a bound child is something more in law than a mere servant—that the apprenticeship establishes a parental relation between the master and apprentice, and, for the purposes of domestic control and occupancy of the house and premises of the master, they stand on the same footing as parent and natural child. That while the unlocking the door of the employer's house by a mere servant in the night-time would be, in law, sufficient breaking to constitute that essential element in the crime of burglary, still, the unlocking the door of the house of a parent by his child, or the house of a master by his apprentice, in order to admit a thief to a room occupied by the child or apprentice for the purpose of stealing the goods of the parent or master, would not, in law, be such a breaking of the house as to constitute burglary."

Instead of charging as requested, his Honor, upon this point, instructed the jury, after explaining the law of burglary: "If a person leave his doors or windows open it is his own folly and negligence, and if a man enter therein it is no burglary. And the unlocking a trunk, or breaking open a

trunk or other article of furniture, and stealing money therefrom, cannot be burglary, unless there was a breaking and entering the dwelling-house for that purpose in the nighttime. The breaking is not confined to an actual breaking— but constructive breaking may be committed, as where one, by artifice or fraud, procures the house to be opened and gaining admission by deceit, or where one gains admission by some trick; so if entrance is obtained by conspiracy, it is a constructive breaking. When a servant conspires with a thief to let him in at a door or window at night, it is burglary in both. Mary Castleberry testified that, by a preconcerted agreement with the prisoner, she opened the door at about ten o'clock at night, by unlocking the same for the defendant, at a given signal, after the members of the family had retired, and that the prisoner was to steal the money from Mrs. Thaxton's trunk; that she was a servant of Mrs. Thaxton's, and that she stayed in a room of the house with Mr. Thaxton's adopted boy, and that she and another did the work, assisting Mrs. Thaxton, and that there were no other servants on the premises. Though Mary Castleberry may have been apprenticed to S. A. Thaxton, if she was there in the capacity of a servant, and she admitted, in the night-time, by agreement, the prisoner into the house, and the prisoner entered for the purpose of stealing money, the prisoner is guilty."

The prisoner excepted to the charge as given and for refusal to charge as asked.

The exception cannot be maintained. It is a constructive breaking " if the house be opened by the servants within by conspiracy with those who enter." 3 Greenleaf, § 77; Wharton's Criminal Law, § 1540.

The apprentice is a servant. Bouvier's Law Dictionary; Title, Servant. The relation of the apprentice to the master is not that of child but servant—is created by contract or by law.

After the evidence had closed, and just before the argument of counsel for the prisoner was commenced, his counsel asked the Judge to put his charge in writing, at the same time asking him to give the instructions which they presented in writing.

After arguments were made, and as the last counsel for the prisoner, who had the conclusion, was about to begin the last speech, counsel for the prisoner stated to the Court that they had an additional instruction to ask for; whereupon the Court told counsel that the instructions asked by them to be put in writing were nearly finished, and that it could not now, at this stage of the case, and under the circumstances, consider further instructions. The counsel for the prisoner excepted, and filed the following prayer for instructions: " That it is deemed hard, and that it is unsafe, to convict upon the testimony of an accomplice, unless that testimony receives material support from evidence coinciding with it in considerable circumstances, as to leave no rational doubt in the mind of the jury of its truth."

By § 414 of *The Code,* the Judge is required to put his instructions in writing, at the request of either party, made at or before the close of the evidence, and § 415 requires counsel asking for instructions to put them in writing. It was evidently intended that the Judge should have time to consider and prepare his instructions; and it is unjust and unfair to him to present a prayer for special instructions at so late a period in the trial as to leave him insufficient time to consider them.

In the present case the exception, if there were any ground for it, is cured by the charge, for his Honor instructed the jury that they "should be slow to convict on the unsupported evidence of an accomplice. Though Mary Castleberry be an accomplice she is competent to testify, and the jury must pass upon the weight and effect of her testimony. If the jury yield faith to the testimony of an accom-

plice, it is not only legal but obligatory on their consciences to found their verdict upon it. The unsupported testimony of an accomplice, if it produce entire belief of the prisoner's guilt, is sufficient to warrant a conviction. You have heard the witnesses, have seen their manner and bearing on the stand, and it is for the jury to say, from all the evidence, whether they are satisfied beyond a reasonable doubt that the prisoner is guilty or not."

The advisory caution suggested by Judge GASTON in *State* v. *Haney*, 2 D. & B., 390, and from which the prayer for instructions requested by counsel for the prisoner is taken, is coupled with the qualification that unless the evidence of the accomplice is supported by "evidence derived *aliunde*" jurors are advised that it is unsafe to convict. His Honor charged the jury that " they should be slow to convict," &c., and his charge, taken together, as clearly presented to the jury, is supported by *State* v. *Haney, supra; State* v. *Hardin*, 2 D. & B., 407; *State* v. *Holland*, 83 N. C., 624, and *State* v. *Miller*, 97 N. C., 484.

There is no error.