STATE v. COUNCIL.

(Filed October 29, 1901.)

1. REHEARING—*Supreme Court—Appeal—Criminal Law.*

Petitions to rehear are not allowable in criminal actions.

2. SUPREME COURT—*Opinions—Per Curiam—Acts 1893, Ch. 379, Sec. 5—Criminal Law.*

The supreme court justices are not required to write their opinions in full.

3. NEW TRIAL—*Supreme Court—Newly-discovered Evidence—Criminal Law.*

The supreme court will not grant new trial in criminal actions for newly-discovered evidence.

4. SUPREME COURT—*Per Curiam Opinions—Homicide—Appeal.*

A person convicted of a capital felony is not prejudiced by the fact that the supreme court renders a *per curiam* opinion affirming the conviction.

5. JURY—*Incompetent Juror—Exceptions and Objections.*

The manner in which a juror is sworn is not ground for objection after verdict.

6. SUPREME COURT—*Appeal Dismissed—Exceptions and Objections—Appeal.*

The supreme court will sometimes decide the points presented in the case on appeal, though the appeal be dismissed.

DOUGLAS, J., dissenting.

ON petition to rehear.　　Petition dismissed.

*E. K. Bryan,* for the petitioner.

*Robert D. Gilmer, Attorney-General,* and *N. A. Sinclair,* in opposition, for the State.

CLARK, J. The Attorney-General moves to dismiss the petition to rehear on the ground that by the uniform practice of the Court, observed from its beginning till now, petitions to rehear are not allowable in criminal actions.

An appeal to this Court is a right. Not so as to a petition to rehear (*Herndon v. Insurance Co.,* 111 N. C., 384; *Solomon v. Bates,* 118 N. C., 321), which is an appeal from this Court to itself and only allowable *ex necessitata* when there is no other possible relief from its judgment. In criminal actions, there is the fullest power vested in the Executive not only to relieve from a judgment of this Court, as could be done by us upon a rehearing, but the facts can be inquired into as the Court could not do, and considerations of equity and of mercy may have a weight which can not be presented on a rehearing in a Court.

In *State v. Jones,* 69 N. C., 16 (for murder), it was held that this Court had no power to rehear a criminal case, Reade, J., saying: "Neither the learned counsel for the prisoner nor the Attorney-General has been able to cite any authority showing that we have the *power* to rehear the case." This has been uniformly followed ever since—as it had been up to that time—and this case is cited in *State v. Starnes,* 94 N. C., by Smith, C. J., who says (page 982) : "No such proposition in reference to criminal prosecutions has ever been made or entertained, so far as our investigations have gone, in this Court. The absence of a precedent (for we can not but suppose such application would have been made on behalf of convicted offenders, if it had been supposed that a power to grant them resided in the appellate Court), is strong confirmatory evidence of what the law was understood to be by the profession." The particular point before the Court in *State v. Starnes* was the motion for a new trial for newly discovered evidence in the Supreme Court on a conviction for rape, which motion was denied in the language

above cited, and this has been cited as authority (*State v. Gooch,* 94 N. C., 1008; *State v. Starnes,* 97 N. C., 423; *State v. Rowe,* 98 N. C., 630)', and has been observed, without filing an opinion, uniformly since, both as to new trials, for newly discovered evidence and rehearings, both of which are allowed (but with certain well-defined restrictions) in civil actions, but never on the criminal side of the docket. It would indeed be an anomaly if the Court can not grant a new trial in criminal cases for newly discovered evidence, but could grant a rehearing. That the practice in this matter has been unbroken for nearly one hundred years is of itself, as the Court has already observed—speaking through Mr. Justice Reade and Chief Justice Smith—a strong argument why we should follow the precedents.

Petitions to rehear were first authorized, in the present terms of the statute at least. Rev. Code, Chap. 33, sec. 1. That with full knowledge of the construction placed upon that provision by the uniform practice of the Court and the decision in *State v. Jones, supra,* it was repeated in the same terms in The Code, sec. 966, it is clear that the profession and the General Assembly and the Code Commission acquiesced in that construction. If, however, the Court were not bound by a century of legislative acquiescence, as well as judicial construction, and, viewed as a new question, the Court might well pause assuming a jurisdiction over the strenuous applications of defendants in criminal actions after the highest Court has decided against them. It is the concurrent testimony of successive Governors that such applications have been the most troublesome matters they have had to deal with, yet they have means of investigation and examination and a leisure which is denied to this Court.

However, legislation has now clearly deprived us of the power, if we had ever possessed it, of granting rehearings in criminal actions. By the Laws of 1887, Chap. 192, sec. 3,

33——129

amending The Code, sec. 962, it is provided: "In all cases of affirmance of a sentence for a capital felony, the Clerk of the Supreme Court at the same time that the decision of the Supreme Court is certified down to the Superior Court, shall send a duplicate thereof to the Governor, who shall immediately issue his warrant under the Great Seal of the State to the Sheriff of the county in which the appellant was sentenced, directing him to execute the death penalty on a day specified in said warrant, not less than thirty days from the date of said warrant; but this shall not deprive the Governor of the power to pardon or reprieve the defendant, or to commute the sentence."

By virtue of Chapter 41, Laws 1887, and Rule 48 of this Court, opinions are certified down on the first Monday in each month, provided they shall have been on file ten days. As opinions are usually filed on Tuesdays, they remain not less than thirteen days and not more than forty-two days *in fieri,* and, in that time, if there is error (and in criminal cases it should be scrutinized in that time) it can be observed and the matter called to the attention of the Court, which, in such cases, on sufficient cause shown, has more than once called up the opinion for reconsideration. If this is not done, the remedy is by application to the Governor. After the opinion is certified to the Governor for execution, the matter is out of the jurisdiction of the Judicial Department, for he is required to issue his warrant immediately to the Sheriff. One Judge of this Court can not, upon an application to rehear, issue his mandamus or his injunction to restrain the Governor from proceeding as the statute has expressly directed him to do, upon reception by him, of the certified opinion of the Court. In this very case, the suspension of execution has been by the courtesy of the Governor in granting a respite under his prerogative, and not by virtue of the order of a member of this Court. That a Judge of

this Court could not issue his order to the Governor commanding him not to proceed, is conclusive that we have no power over the matter after the certificate of the opinion of this Court has gone to him. The matter has then gone into his hands, and the public history of this case shows that the Executive has fully and carefully investigated all claims made for leniency. Further action is left by the Constitution and laws with him. No criticism is intended upon the action of the member of the Court who granted the order for a rehearing, for it was desirable that this point should be squarely presented and finally set at rest, which might as well be done in this case as in another. .

: The same is true as to convictions for lesser offenses, for the same section (section 3, Chap. 192, Laws 1887) provides: "In criminal cases the Clerk of the Superior Court, in all cases where the judgment has been affirmed (except where the conviction is of a capital felony) shall forthwith, on receipt of the certificate of the opinion of the Supreme Court, notify the Sheriff, who shall proceed to execute the sentence appealed from." Thus showing the evident clearly expressed intention that the matter should then be in the hands of the Executive Department, and execution of the judgment proceed without interruption, unless by executive clemency. It is otherwise as to civil matters, as to which, by the same statute, no action can be taken till a new judgment is rendered by the Court below.

Counsel for the prisoner seem to think it a grievance that a *per curiam* decision, instead of an opinion, was filed in this case, 128 N. C., 616. But if the General Assembly could still require the Court to file opinions (which it can not do since the Constitution of 1868, *Horton v. Green*, 104 N. C., 400; *Herndon v. Ins. Co.*, 111 N. C., 384), the same authority has relieved the Court of the former statute by enacting (Laws 1893, Chap. 379, sec. 5): "The Supreme Court

Justices shall not be required to write their opinions in full except in cases in which they deem it necessary."

As the Court had already held, in the cases above cited, that the General Assembly, under the present Constitution had no control over such matters, this has only a persuasive effect on us as the opinion of a co-ordinate branch that unnecessary opinions had been filed, taxing alike the public treasury and the time of the profession. In deciding what cases shall be disposed of by a *per curiam* decision without an opinion, we have always been guided, not by the importance or unimportance of the matter at issue, but by considering whether or not the propositions of law presented had not been already frequently decided. Accordingly, we find that in other States appeals in capital cases have not infrequently gone off on a *per curiam* decision without opinion, and in some States it is always done when the judgment is affirmed, and in England no appeal has ever been allowed in criminal cases, the remedy being by application for executive clemency.

When the appeal was heard at last term, the point most pressed was the motion for a new trial for newly discovered evidence. It had been well settled that such motions in criminal cases would not be heard in this Court (*State v. Starnes, supra*), and that even in civil cases such motions would be disposed of by *per curiam order. Herndon v. Railroad,* 121 N. C., 499; *Brown v. Mitchell,* 102 N. C., 347; *Ferebee v. Pritchard,* 112 N. C., 83, and many other cases, and the same course was necessarily pursued in this case.

Another point was made, though properly not much relied on, that one of the jurors had not been properly sworn. This has been more pressed on this argument, but it was presented and considered and decided by us before. It was so well settled that if there was such irregularity, it was cured by not objecting in apt time, that we deemed no repetition of adju-

dications necessary. The juror was sworn in presence of prisoner and his counsel, and to let him acquiesce in the manner in which the oath was taken, and then object after verdict, would simply make a trial not a decision upon the merits, but a series of pitfalls for the State. Not having spoken when he was called upon to speak, the prisoner should not be heard after the verdict has gone against him. *State v. Boone,* 82 N. C., 637; *State v. Patrick,* 48 N. C., 443; *Briggs v. Byrd,* 34 N. C., 377; *State v. Ward,* 9 N. C., 443. Even where a juror is incompetent because a minor (*State v. Lambert,* 93 N. C., 618), or an atheist (*State v. Davis,* 80 N. C., 412), or not a freeholder (*State v. Crawford,* 3 N. C., 485), or a non-resident (*State v. White,* 68 N. C., 158), or related (*Baxter v. Wilson,* 95 N. C., 137), and these objections are not discovered until after verdict, setting aside the verdict, rests in the discretion of the trial Judge. *State v. Lambert, supra,* and many cases there cited. For a stronger reason, this must be so when the objection is merely to the manner in which a competent juror is sworn, when the oath is taken in the prisoner's presence who makes no objection. This is like the case of incompetent evidence admitted without objection, and the like. In *State v. Gee,* 92 N. C., 756, where a witness was not sworn at all, the Court held that this was not ground of objection after verdict.

Indeed, it appears from the affidavit of the Clerk of the Court that the juror was sworn in the proper manner, and the manner of his oath taken before the Judge afterwards, indicates as much. Besides, there is no finding of fact by the Judge as to the manner in which the oath was taken (*State v. DeGraff,* 113 N. C., 689), which the appellant should have asked for if he wished the action of the Judge reviewed. *Whitehead v. Hale,* 118 N. C., 601.

Though the petition to rehear must be dismissed, we have discussed the objection, as has sometimes been done when

an appeal is dismissed.    *State v. Wylde,* 110 N. C., 500, and cases there cited.

Petition Dismissed.

DOUGLAS, J., dissenting.    I can not concur in the opinion of the Court, because my convictions are to the contrary.    I readily concede that this decision settles the question that, in no case can a rehearing be had in a criminal action, and I think it better that it should be settled one way or the other. And yet, knowing that rehearings are constantly granted in civil cases, and finding no distinction between civil and criminal actions, either in the statute or the rules of this Court, I am unwilling to say, even by implication, that property is more valuable than life and liberty, or entitled to a greater degree of protection.    The argument that in criminal cases the pardoning power of the Governor fulfills the purpose of a rehearing, is purely *ab inconvenienti,* and, to my mind, does not meet the ends of justice.    Pardon is an act of mercy, and so far from establishing the innocence of anyone, presupposes his guilt.    The Governor may restore to him his liberty, but not his character.

What a defendant asks in a rehearing is that he may have a fair trial; and yet, no matter how clearly his innocence may appear, nor how great the error we ourselves may have committed, we can give him no relief.    He must throw himself at the feet of the Executive and beg the poor favor of passing the remainder of his life in the penitentiary; or, at best, wandering through the world a social outcast, bearing the brand of a convicted felon.    This may become the law, but through no act of mine.

As the petition to rehear is dismissed, it is useless for me to discuss the merits of the case.    My reasons for directing it to be docketed are given at length in the original order, which is hereto attached, to-wit:

"This is a petition made in apt time and proper form to rehear a criminal case, wherein the petitioner is under sentence of death.    As this case was decided upon a *per curiam* order while I was absent from the bench, I am ignorant equally of the grounds of the decision and the reasons and authorities influencing the Court.    However, I have no hesitation in saying that, in my opinion, this is a proper case to be reheard, but I feel great hesitation in ordering it to be docketed in view of the decision of this Court in *State v. Jones,* 69 N. C.,16.    That case is directly in point, and expressly holds that "the Supreme Court has no power to entertain a petition to rehear a criminal action."    It is but just to counsel as well as myself to say that that decision does not meet my approval, in spite of my respect and admiration for the great Court that delivered it.    In fact, it scarcely seemed to satisfy the Court itself, as the learned Justice writing the opinion, after deciding this vital point against the petitioner, proceeds to discuss the points raised in the petition as fully as if the petition had been allowed.

"This case was decided upon no precedents whatever, as there were admittedly none then, and I am able to find none other since.    It is true, Jones' case is cited in *State v. Starnes,* 94 N. C., 973, 981; and in *State v. Rowe,* 98 N. C., 629, 630; but these latter cases relate exclusively to motions for new trial for newly discovered evidence, and have no apparent bearing upon the question of rehearing.    The reasons given by the Court are as follows: 'Neither the learned counsel for the prisoner nor the Attorney-General has been able to cite any authority showing that we have the *power* to rehear the case. In equity cases and in civil actions the practice has been common, but in criminal cases never to our knowledge.    In the former cases, this Court makes decrees and passes judgments, which may be reviewed.    But in criminal cases we do not pass judgment.    Such cases are sent up for our opinion only,

which we certify to the Court below, and there our jurisdiction ends.' Whatever force these reasons might then have had, they have none now to my mind. This Court constantly grants rehearings in civil actions, where it passes no judgment whatever, and makes no decrees. Rules 52 and 53, providing for rehearings, make no distinction between civil and criminal cases, and I see none. If the title to a chicken were involved, I could grant a rehearing; but as a human life is at stake, I am utterly powerless. To my mind, such a distinction finds no just foundation in law, in public policy or in humanity. The rights of property can never be more sacred than the security of the person, as they have no independent existence, but exist only in relation to the owner.

"The guilt or innocence of the prisoner is not for me to decide, nor can I properly consider the facts that the Judge who tried the prisoner has grave doubts of his guilt, that the Solicitor who prosecuted him does not believe that he is guilty, and that the jury that convicted him rendered a verdict only after a distinct understanding among themselves and with the Court that it should be coupled with a recommendation to mercy. These facts, however strong and significant, appeal only to executive clemency, and not to judicial action.

"However much a Justice may dissent from the decisions of a Court, and however full his right of dissent when sitting with the Court, he is bound by them when acting in his individual capacity. But docketing a case is not overruling any opinion that may be involved. It is simply bringing the matter before the Court for such action as it may see fit to take. In no other way whatever can it be brought before the Court. Even if the Court were in favor of a rehearing, it could not act under its rules unless some individual Judge took the responsibility of ordering the case to be docketed. Feeling as I do, I think the Court should have an opportunity to pass upon the question, which can never be presented more clearly or more forcibly.

"I am somewhat influenced in this course by the fact that the Governor frankly states that he will reprieve the prisoner if I order his petition to be docketed, *but not otherwise;* and by the further fact that eminent members of the bar think that criminal cases *can* be reheard, a view in which I understand His Excellency to fully concur. Unless his case is docketed, the petitioner will be hanged next Monday, and this Court would then be powerless to correct any error that may exist, no matter how great or manifest. The petitioner has been convicted of what is properly regarded as the highest crime known to our law, and if guilty should be punished. But he is entitled to a fair trial, and if innocent, his execution would inflict a wrong which eternity alone can repair. Under such circumstances, I feel it my duty to act, no matter how great may be my reluctance or the responsibility which it involves.

"The Clerk will docket this case, and file this opinion with the petition. He will also issue the proper notices, including one to the Governor.

"This 8th day of August, 1901.

　　　　　　　　　　　　"R. M. DOUGLAS,
　　　　　　　　　　　　*"Associate Justice."*