DOUGLAS, J., dissenting.
The Attorney-General moves to dismiss the petition to rehear on the ground that by the uniform practice of the Court, observed from its beginning till now, petitions to rehear are not allowable in criminal actions.
An appeal to this Court is a right. Not so as to a petition to rehear (Herndon v. Insurance Co., 111 N.C. 384; Solomon v. Bates, 118 N.C. 321), which is an appeal from this Court to itself and only allowable exnecessitata when there is no other possible relief from its judgment. In criminal actions, there is the fullest power vested in the Executive not only to relieve from a judgment of this Court, as could be done by us upon a rehearing, but the facts can be inquired into as the Court could not do, and considerations of equity and of mercy may have a weight which can not be presented on a rehearing in a Court.
In State v. Jones, 69 N.C. 16 (for murder), it was held that this Court had no power to rehear a criminal case, Reade, J., saying: "Neither the learned counsel for the prisoner nor the Attorney-General has been able to cite any authority showing that we have the power to rehear the case." This has been uniformly followed ever since — as it had been up to that time — and this case is cited in State v. Starnes, 94 N.C. by Smith, C. J., who says (page 982): "No such proposition in reference to criminal prosecutions has ever been made or entertained, so far as our investigations have gone, in this Court. The absence of a precedent (for we can not but suppose such application would have been made on behalf of convicted offenders, if it had been supposed that a power to grant them resided in the appellate Court), is strong confirmatory evidence of what the law was understood to be by the profession." The particular point before the Court in State v. Starnes was the motion for a new trial for newly discovered evidence in the Supreme Court on a conviction for rape, which motion was denied in the language *Page 513 
above cited, and this has been cited as authority (State v. Gooch,94 N.C. 1008; State v. Starnes, 97 N.C. 423; Statev. Rowe, 98 N.C. 630) and has been observed, without filing an opinion, uniformly since, both as to new trials, for newly discovered evidence and rehearings, both of which are allowed (but with certain well-defined restrictions) in civil actions, but never on the criminal side of the docket. It would indeed be an anomaly if the Court can not grant a new trial in criminal cases for newly discovered evidence, but could grant a rehearing. That the practice in this matter has been unbroken for nearly one hundred years is of itself, as the Court has already observed — speaking through Mr. Justice Reade and Chief Justice Smith — a strong argument why we should follow the precedents.
Petitions to rehear were first authorized, in the present terms of the statute at least. Rev. Code, Chap. 33, sec. 1. That with full knowledge of the construction placed upon that provision by the uniform practice of the Court and the decision in State v. Jones, supra, it was repeated in the same terms in The Code, sec. 966, it is clear that the profession and the General Assembly and the Code Commission acquiesced in that construction. If, however, the Court were not bound by a century of legislative acquiescence, as well as judicial construction, and, viewed as a new question, the Court might well pause assuming a jurisdiction over the strenuous applications of defendants in criminal actions after the highest Court has decided against them. It is the concurrent testimony of successive Governors that such applications have been the most troublesome matters they have had to deal with, yet they have means of investigation and examination and a leisure which is denied to this Court.
However, legislation has now clearly deprived us of the power, if we had ever possessed it, of granting rehearings in criminal actions. By the Laws of 1887, Chap. 192, sec. 3, *Page 514 
amending The Code, sec. 962, it is provided: "In all cases of affirmance of a sentence for a capital felony, the Clerk of the Supreme Court at the same time that the decision of the Supreme Court is certified down to the Superior Court, shall send a duplicate thereof to the Governor, who shall immediately issue his warrant under the Great Seal of the State to the Sheriff of the county in which the appellant was sentenced, directing him to execute the death penalty on a day specified in said warrant, not less than thirty days from the date of said warrant; but this shall not deprive the Governor of the power to pardon or reprieve the defendant, or to commute the sentence."
By virtue of Chapter 41, Laws 1887, and Rule 48 of this Court, opinions are certified down on the first Monday in each month, provided they shall have been on file ten days. As opinions are usually filed on Tuesdays, they remain not less than thirteen days and not more than forty-two days infieri, and, in that time, if there is error (and in criminal cases it should be scrutinized in that time) it can be observed and the matter called to the attention of the Court, which, in such cases, on sufficient cause shown, has more than once called up the opinion for reconsideration. If this is not done, the remedy is by application to the Governor. After the opinion is certified to the Governor for execution, the matter is out of the jurisdiction of the Judicial Department, for he is required to issue his warrant immediately to the Sheriff. One Judge of this Court can not, upon an application to rehear, issue his mandamus or his injunction to restrain the Governor from proceeding as the statute has expressly directed him to do, upon reception by him of the certified opinion of the Court. In this very case, the suspension of execution has been by the courtesy of the Governor in granting a respite under his prerogative, and not by virtue of the order of a member of this Court. That a Judge of *Page 515 
this Court could not issue his order to the Governor commanding him not to proceed, is conclusive that we have no power over the matter after the certificate of the opinion of this Court has gone to him. The matter has then gone into his hands, and the public history of this case shows that the Executive has fully and carefully investigated all claims made for leniency. Further action is left by the Constitution and laws with him. No criticism is intended upon the action of the member of the Court who granted the order for a rehearing, for it was desirable that this point should be squarely presented and finally set at rest, which might as well be done in this case as in another.
The same is true as to convictions for lesser offenses, for the same section (section 3, Chap. 192, Laws 1887) provides: "In criminal cases the Clerk of the Superior Court, in all cases where the judgment has been affirmed (except where the conviction is of a capital felony) shall forthwith, on receipt of the certificate of the opinion of the Supreme Court, notify the Sheriff, who shall proceed to execute the sentence appealed from." Thus showing the evident clearly expressed intention that the matter should then be in the hands of the Executive Department, and execution of the judgment proceed without interruption, unless by executive clemency. It is otherwise as to civil matters, as to which, by the same statute, no action can be taken till a new judgment is rendered by the Court below.
Counsel for the prisoner seem to think it a grievance that a per curiam
decision, instead of an opinion, was filed in this case, 128 N.C. 616. But if the General Assembly could still require the Court to file opinions (which it can not do since the Constitution of 1868, Horton v. Green,104 N.C. 400; Herndon v. Ins. Co., 111 N.C. 384), the same authority has relieved the Court of the former statute by enacting (Laws 1893, Chap. 379, sec. 5): "The Supreme Court *Page 516 
Justices shall not be required to write their opinions in full except in cases in which they deem it necessary."
As the Court had already held, in the cases above cited, that the General Assembly, under the present Constitution had no control over such matters, this has only a persuasive effect on us as the opinion of a co-ordinate branch that unnecessary opinions had been filed, taxing alike the public treasury and the time of the profession. In deciding what cases shall be disposed of by a per curiam decision without an opinion, we have always been guided, not by the importance or unimportance of the matter at issue, but by considering whether or not the propositions of law presented had not been already frequently decided. Accordingly, we find that in other States appeals in capital cases have not infrequently gone off on a percuriam decision without opinion, and in some States it is always done when the judgment is affirmed, and in England no appeal has ever been allowed in criminal cases, the remedy being by application for executive clemency.
When the appeal was heard at last term, the point most pressed was the motion for a new trial for newly discovered evidence. It had been well settled that such motions in criminal cases would not be heard in this Court (State v. Starnes, supra), and that even in civil cases such motions would be disposed of by per curiam order. Herndon v. Railroad, 121 N.C. 499;Brown v. Mitchell, 102 N.C. 347; Ferebee v. Pritchard, 112 N.C. 83, and many other cases, and the same course was necessarily pursued in this case.
Another point was made, though properly not much relied on, that one of the jurors had not been properly sworn. This has been more pressed on this argument, but it was presented and considered and decided by us before. It was so well settled that if there was such irregularity, it was cured by not objecting in apt time, that we deemed no repetition of adjudications *Page 517 
necessary. The juror was sworn in presence of prisoner and his counsel, and to let him acquiesce in the manner in which the oath was taken, and then object after verdict, would simply make a trial not a decision upon the merits, but a series of pitfalls for the State. Not having spoken when he was called upon to speak, the prisoner should not be heard after the verdict has gone against him. State v. Boone, 82 N.C. 637; State v.Patrick, 48 N.C. 443; Briggs v. Byrd, 34 N.C. 377; State v. Ward,9 N.C. 443. Even where a juror is incompetent because a minor (State v.Lambert, 93 N.C. 618), or an atheist (State v. Davis, 80 N.C. 412), or not a freeholder (State v. Crawford, 3 N.C. 485), or a nonresident (Statev. White, 68 N.C. 158), or related (Baxter v. Wilson, 95 N.C. 137), and these objections are not discovered until after verdict, setting aside the verdict, rests in the discretion of the trial Judge. State v. Lambert,supra, and many cases there cited. For a stronger reason, this must be so when the objection is merely to the manner in which a competent juror is sworn, when the oath is taken in the prisoner's presence who makes no objection. This is like the case of incompetent evidence admitted without objection, and the like. In State v. Gee, 92 N.C. 756, where a witness was not sworn at all, the Court held that this was not ground of objection after verdict.
Indeed, it appears from the affidavit of the Clerk of the Court that the juror was sworn in the proper manner, and the manner of his oath taken before the Judge afterwards, indicates as much. Besides, there is no finding of fact by the Judge as to the manner in which the oath was taken (State v. DeGraff, 113 N.C. 689), which the appellant should have asked for if he wished the action of the Judge reviewed. Whitehead v. Hale,118 N.C. 601.
Though the petition to rehear must be dismissed, we have discussed the objection, as has sometimes been done when *Page 518 
an appeal is dismissed. State v. Wylde, 110 N.C. 500, and cases there cited.
Petition Dismissed.