DAVE LOVETT, PLAINTIFF IN ERROR VS. THE STATE OF FLORIDA, DEFENDANT IN ERROR.

1. The Supreme Court entered judgment, on writ of error, reversing a judgment of the Circuit Court in a capital case and issued its *remittitur*, which was filed in the latter court. Subsequently during the same term of the Supreme Court it was shown that the transcript upon which it had acted was on account of a mistake in making such transcript, an entire misrepresentation of the real record of the Circuit Court, as to the point upon which the judgment of reversal was based, and a motion was made in behalf of the State by the Attorney-General, who had relied on the transcript as truthful, and had not

Dave Lovett v. The State of Florida.—Argument of Counsel.

participated in the trial in the Circuit Court, to vacate the entry of the judgment of reversal, and restore the case to the docket of the Supreme Court : *Held,* That the Supreme Court had not lost jurisdiction of the cause, and its entry of judgment should be vacated, and the cause recalled and restored to its docket.

2. The counsel of an appellant party is charged with the duty of bringing to the appellate court a correct transcript of the record of the inferior court, and no advantage can be gained from any action of the former court upon a false transcript, however ignorant the appellant party or his counsel may be of the real status of the record of the lower court, or of the incorrectness of the transcript, or however free from blame the clerk may have been as to the mistakes in the transcript.

Writ of error to the Circuit Court for Duval county.

The facts in the case are stated in the opinion of the court.

Motion to vacate judgment and for rehearing.

*The Attorney-General* for motion.

*Robert S. Cockrell, contra.*

As an attorney and official of the Circuit Court of Duval county, the following statement is submitted by me.

At the Fall term, A. D. 1891, of said court, Dave Lovett was indicted for the murder of March Scroggins. The prisoner being without counsel and unable to employ counsel, I was assigned by the court to his

defense, and bore no relation to him, other than by virtue of said assignment.

He was tried and convicted and sentenced to be hanged.

Believing that error had occurred, it became my imperative duty towards this friendless pauper, to seek to have such errors corrected by resort to the highest tribunal in the State. So it was, I submitted a bill of exceptions, and sued out a writ of error.

I applied to the Clerk of said Circuit Court for a transcript, duly certified, of the record in this case and submitted assignments of error and brief of argument upon the transcript to this court at the present term. On the 9th day of April, 1892, this court rendered its final judgment thereon, reversing the judgment of the lower court and granting a new trial. On the sixteenth day of the same month, this court sent down to the Clerk of said Circuit Court, its mandate, directing the lower court to award a new trial to the said Lovett, and this mandate was duly received and filed by said Clerk.

Thereafter, and on the 30th day of said month, a motion is placed upon the motion docket of this court by the Attorney-General, entitled as in the case of Dave Lovett, Plaintiff in Error, vs. State of Florida, Defendant in Error, "to vacate the judgment heretofore rendered, and that a rehearing be granted in the same, for the reason that what purports to be a record in said cause is not in fact a true and correct transcript of the record in the court below."

By a letter, dated May 2d, 1892, I am notified by the Attorney-General that this motion will be called for argument on Saturday, the 7th instant.

On the 2d instant the said mandate was returned from the files of the Circuit Court of Duval county to this court.

In response to this notification, and as *amicus curiæ* and not otherwise, I submit the following.

No fraud, nor collusion, nor the suspicion of either fraud or collusion have been suggested, in the preparation of this transcript or the certification thereof, between the Clerk of the Circuit Court and Dave Lovett, or between said clerk and the attorney or other agent or friend of Dave Lovett. Nor has it been suggested that said Lovett, or his agent or friend or attorney had anything to do with the preparation of said transcript, other than to ask for it.

Nor has there been any such intimation, suspicion or suggestion of fraud or collusion between the clerk of this court and Lovett, or his agent or attorney, or any irregularity of the clerk in sending the mandate of the Supreme Court for filing in the Circuit Court. Nor that there was pending a petition for rehearing when the mandate was so sent down.

The term of the Circuit Court for Duval county, intervening next after the mandate, was begun and held on the 2d instant, the day upon which the mandate was so returned from its files.

Whether the said Lovett was again tried by the said

Circuit Court on said 2d day of May, before said mandate was so returned from its files does not appear.

Whether if not so tried, the Circuit Court of Duval county has asserted its jurisdiction acquired by the return of the mandate, or surceased therefrom does not appear.

Nor does it appear that Dave Lovett has been advised that the Circuit Court has asserted, or proposes to assert its jurisdiction, or has surceased, or proposes to surcease its jurisdiction, acquired by the mandate of this court so recorded on its files.

Nor does it appear that Dave Lovett has been advised that the Supreme Court has recalled or sought to recall its mandate.

Nor does it appear that said Lovett has been advised that a motion has been made before the Supreme Court to vacate the judgment heretofore rendered, in terms giving him another chance for his life.

His incarceration and abject helplessness do not justify this court in depriving him of all safeguards provided by the beneficence of the law.

In the absence of any fraud, imposition, or false suggestion, or petition for rehearing pending before mandate was so sent down and filed, I submit that this court would have no jurisdiction of this matter, even were it one involving merely pecuniary or propietary interest, and certainly is this the case where life is involved, and would urge to the attention of this court the following authorities: Burkle vs. Luce, 1 N. Y., 239; Martin vs. Wilson, *Id.*, 240; Legg vs. Overlapp,

4 Wend., 188; Blane vs. Bowman, 22 Cal., 24, and cases cited; 24 Cal., 52; King vs. Ruckman, 7 C. E. Green, 55; Putnam vs. Clark, 8 Stewart, (N. J. Eq.), 145; Martin vs. Hunter's Lessees, 1 Wheat., 355; The Palmyra, 12 Wheat., 11; Southard vs. Russell, 16 How., 571.

RANEY, C. J.:

Upon the filling of the former opinion in this cause judgment was entered reversing the judgment of the Circuit Court of Duval county and remanding the case for a new trial; and our mandate issued, directed to the judge of the court requiring that such further proceedings be had in the cause as, according to right and justice, the judgment of this court and the laws of the State, ought to be had, and this mandate was filed in the office of the clerk of the Circuit Court on the 18th day of April. On the 31st day of April, the Attorney-General moved for a vacation of our judgment, and for a rehearing of the cause, for the reason that what purports to be a transcript of the record of the Circuit Court on file in this court, and on which we have acted in rendering the preceding decision, is not a true and correct transcript of such record, and that the alleged defects of record upon which the judgment of conviction was reversed by us do not exist, but that the contrary is true; and suggesting a diminution of the record and moving for a *certiorari* for a return of the entries showing the presence of the accused at the time of the trial, and

his arraignment and plea of not guilty. In support
of the motion the Attorney-General presented and
filed a duly certified transcript from the record of the
Circuit Court of Duval county, under the hand and
seal of the clerk of that court, which, after showing
the presentment of the indictment for murder in the
first degree against Lovett in open court, on the 20th
day of November, 1891, at the Fall term, exhibits also
the following entries, of the date indicated at the same
term :

"November 23, 1891.

STATE OF FLORIDA  
      vs.       } Arraignment. Plea of not guilty.  
DAVE LOVETT.

Comes T. A. McDonell, who prosecutes for the State
of Florida, and the defendant, Dave Lovett, in his own
proper person, and being solemnly arraigned, pleaded
not guilty to the indictment, whereupon he was re-
manded to the custody of the sheriff to await the fur-
ther action of the court.

"December 10th, 1891.

STATE OF FLORIDA  
      vs.       }  
DAVE LOVETT.

Comes now T. A. McDonell, who prosecutes for the
State of Florida, and the defendant being present at
the bar, attended by his counsel," (then follow in the
same entry, two orders : one for a special venire for
twelve jurors, the regular venire having been exhausted,
another for a venire of ten jurors.) The entry concludes

as follows : "The three jurors necessary to complete the panel for the trial of this cause having been accepted, the following named jurors" (their names being stated, and there being twelve of them) "were accepted and duly sworn according to law for the trial of this cause. ' And the evidence having been submitted to the jury aforesaid, and having heard the argument of counsel and charge of the court, and returning into court in due form of law, upon their oaths do say : ' We, the jury, find the prisoner guilty as charged in the indictment. J. C. Andreu, foreman.' It is thereupon considered by the court that the defendant be remanded to the custody of the sheriff, to await the further action of the court."

Then follows the entry of sentence on December 14th, in the form shown by the statement preceding the former opinion.

Upon the presentation of the motion we recalled our mandate, and caused notice of the hearing of the motion to be given to the accused and to the attorney who represented him both in the Circuit Court and in this court. This attorney, disclaiming any representation of the accused, as his attorney in this proceeding, has volunteered to file, as *amicus curiæ*, a statement, with authorities, upon the motion, which authorities are reviewed, with others, in the subsequent pages of this opinion.

It is apparent that the State's motion is made during the term of court at which the judgment which it is sought to have revoked was pronounced and entered,

and it is a general rule of the common law, that courts have power either to modify or vacate their judgments and decrees during the term at which they were rendered, or while they are *in fieri.* Freeman on Judgments (4th Ed.), sec. 90 ; Bronson vs. Schulten, 104 U. S., 410. If our mandate had not reached the Circuit Court before the motion was made, and we had recalled it before it was filed with or received by the clerk, the question before us would be of easier solution; Burkle vs. Luce, 1 N. Y., 239; Hosack vs. Rogers, 7 Paige, 108 ; Grogan vs. Ruckle, 1 Cal., 193 ; still in our judgment the consummation of the issue of the mandate, by its receipt by the court whose judgment has been under review, is not, under the circumstances of this case, a termination of our jurisdiction. It is true we find in some adjudications a statement, in general terms, that this juncture concludes the jurisdiction of the appellate court; in Martin vs. Wilson, 1 N. Y., 40, a motion was made in the Court of Appeals to open a judgment of affirmance taken by default at a former term, and "the court held that it lost its jurisdiction of the cause when the *remittitur* was filed in the court below, and on that ground denied the motion ;" and in Grogan vs. Ruckle, *supra,* the doctrine announced was that the court may, after its judgment has been pronounced, direct a rehearing at any time before the *remittitur* has been sent to and filed in the clerk's office of the lower court, but after that has been done the jurisdiction of the appellate court to order a rehearing ceases; but the real fact in the case was that the *remittitur* was improperly sent down

after the entry, at the same term, of the order for a rehearing, and it was held that so doing did not deprive the court of its jurisdiction.　Again in Leese vs. Clark, 20 Cal., 387, it is said that the Supreme Court has no appellate jurisdiction over its own judgments, and cannot review or modify them after the case has once passed, by the issuance of the *remittitur*, from its control, nor recall the cause and reverse its decision ; but the court was speaking of the binding effect of a former decision in the same cause.　Martin vs. Hunter's Lessee, 1 N. H. 355.　The same doctrine was enunciated in Blane vs. Bowman, 22 Cal., 23, where a motion was made to set aside an order, made at the same term, affirming a judgment, the ground of the motion being that one of the judges who participated in the decision had not heard the oral argument of the cause.　In the decision of this motion, the court, after alluding to the reason of the rule of court providing that *remittitur* shall not issue for ten days after judgment, as being to allow time for applications for rehearings or to modify or set aside the judgment, observes : "No excuse is shown why this application was not made within the ten days allowed by the rules of this court, or before the court had lost control of the *cause* by filing the *remittitur* in the court below."

The facts of the preceding cases had not called for, it would seem, even an investigation, as to the power of the court to recall the cause under any circumstances after the mandate has been filed in the lower court.

In Rowland vs. Kreyenhagen, 24 Cal., 52, appeals in

two cases were dismissed, at the October term, 1863, on motion of appellee, because transcripts had not been filed. The rules of court provided that if the appeal transcript was not filed within the time prescribed, the appeal might be dismissed *ex parte* during the first week of the term, and that such dismissal should be *final*, and *a bar to any other appeal* in the same case, unless the appeal should be restored *during the same term* upon good cause shown and upon notice. An order, made as the court was about to adjourn in October, provided that all motions to reinstate causes dismissed under the rules referred to, might be made on the first Tuesday in November following, and directed that *remittiturs* should not issue till after that time. About the last of November, no motion to reinstate having been made, *remittiturs* were issued in the two causes mentioned, and filed in the lower courts and judgments were entered thereon and executions issued. On December 20th two justices, upon representations made by affidavits, signed an order directing a return of the *remittiturs*, and that the attorneys for respondents show cause before the Supreme Court why the orders of dismissal should not be vacated and the causes reinstated on the calendar, on the ground that the orders of dismissal were obtained upon false suggestion and mistake, and improvidently granted, and staying further proceedings in the lower court, and the court vacated the dismissals and reinstated the causes. A petition for rehearing was granted. In delivering the opinion of the court, and after holding that the

dismissal of an appeal, if not reinstated during the term, was, under the above rules, an affirmance of the judgment appealed from as conclusive and binding upon the parties and the court as a direct judgment of affirmance, and after referring to cases mentioned above, and recognizing the general rule to be that stated by them, it is said, that this general rule rests upon the supposition that all the proceedings have been regular and that no fraud or imposition has been practiced upon the court or the opposite party ; and that if it appears that such has been the case, the court will assert its jurisdiction and recall the case ; that against judgments improvidently granted, upon a false suggestion, or under a mistake as to the facts of the case, the court will afford relief after the adjournment of the term, and, if necessary, recall the *remittitur* and stay proceedings in the court below.   That this is not done upon the principle of resumption of jurisdiction, but upon the ground that the jurisdiction of the court can not be divested by an irregular or improvident order ; that in contemplation of law an order obtained upon a false suggestion is not the order of the court, and may be treated as a nullity ; if, under color of such an order, the proceedings have in part (fact) found their way back to the court below, yet in law they are considered as still pending in the appellate court, and that court may take such steps as may be necessary to make the fact and the law agree.   The evidence was held, however, not to show that the dis-

missals were improvidently or irregularly granted, and the orders recalling the *remittiturs* were vacated, and a reinstatement of the appeals denied. In Vance vs. Pena, 36 Cal., 328, an order denying a rehearing was entered, through the mistake of the clerk, when in fact the court had granted a rehearing, and the court adjourned and the *remittitur* was sent down. At the next term a motion was made to recall the *remittitur* and reinstate the cause and vacate the order mistakenly entered, and for the entry of the order really announced. In affirming the doctrine of Roland vs. Kreyenhagen, it is said: "This must be so or intolerable injustice might result. The principle here announced is broad enough to cover the present case. There has been a false order entered by mistake, * * and upon this false order the *remittitur* issued. A mistake of this kind stands upon the same principle as a fraud, for it operates as a fraud upon the rights of the party injured by it." The motion was granted. See also Swain vs. Naglee, 19 Cal., 127. In Lightstone vs. Laurencel, 2 Cal., 106, a judgment of affirmance was entered by the Supreme Court on motion of the appellee, the appellant not appearing; and at the subsequent term appellant moved to set aside the judgment and restore the cause to the calendar, for the reason that no notice of the argument had been served on him, and the court sustained the motion. Legg vs. Overbagh, 4 Wendell, 188, was a case where the decree appealed from was affirmed for default of counsel of ap-

pellants to appear and argue the appeal at the time it was duly set down and noticed for argument, such absence of counsel being attributable to sickness. The *remittitur* was regularly issued and filed in the lower court, and the court for the correction of errors held, on a motion to reinstate, that it had lost jurisdiction of the cause, and had no power to vacate its decree of affirmance; but the doctrine that jurisdiction is not lost, and the case may be recalled, where either the mandate was issued irregularly, or the order or judgment of the appellate court has been irregularly or improvidently obtained, or its judgment has been misconceived and entered erroneously by its clerk, is recognized in the opinion. "When issued irregularly," says Savage, C. J., "in contemplation of law the proceedings remain here, and the order or decree made will of course be suspended; the *remittitur* issued not being considered the act of the court." The same court previously, in Waters vs. Travis, 8 Johnson, 566, where a decree by default for not answering the petition of appeal, had been entered reversing the decree appealed from, vacated its decree, after the record had been remitted to the lower court, and for the reason that the required notice to answer the petition had not been served on the appellee; and in Chamberlain vs. Fitch, 2 Cowen, 243, it set aside a decree of reversal obtained, on default, in violation of verbal stipulations between counsel, and directed the papers in the cause to be returned by the Court of Chancery,

to which they had been remitted.    In the case of The Palmyra, 12 Wheaton, 1, there had been a decree in the District Court acquitting the vessel and denying any damages for her capture or detention, and both parties had appealed to the Circuit Court, which court affirmed the acquittal of the vessel, but reversed so much of the decree appealed from as denied damages, and then proceeded to award damages to the complainant for a stated sum.    From this decree the United States and the captors appealed to the Supreme Court, and the cause coming on to be heard, that court, upon an inspection of the record, dismissed the appeal because it did not appear that there had been an ascertainment of the amount of the damages, the court being of opinion that in the absence of a decree ascertaining the amount of damages there was no "final decree," within the meaning of the act of Congress. At a subsequent term of the court it was made to appear that there had been a final award of damages, and that the error was a mere misprision of the Clerk of the Circuit Court, in transmitting an imperfect record, and the court, on motion of the appellants, ordered the cause to be reinstated on the docket.    See also Vicars vs. Haydon, 2 Cowper, 841.

In the case of White vs. Tommey, 3 House of Lords Cases, 49, there was a final judgment in the House of Lords in the year 1850, reversing a decree rendered by the Irish Court of Chancery in January, 1835, from

which decree a former application to appeal had been refused by the House in 1839 ; and after such reversal and at the same sitting of the House of Lords there was a petition for rehearing, the ground thereof being that the respondents, petitioners, had been taken by surprise, and had not been heard. The judgment upon the petition was that respondents' failure to be heard in the House of Lords was their own fault, and that after a final judgment of the House had been pronounced there could not be a rehearing, nor could its judgment be reversed, except by act of Parliament. Subsequently, however, in the same case in the year 1853, (4 H. L. Cases, 313) it was shown by the respondents, on a further petition, that the decree of January, 1835, had been before the House on an appeal taken in 1846, from an order sustaining a demurrer to a bill of review, calling in question the decree of 1835, and had then been specially complained of in the petition of appeal, and that, on such appeal, there had been in July, 1847, a general dismissal of the appeal, and also a special affirmance of the order on the demurrer, but no special mention of the decree of 1835 had been made in the order of dismissal. In the petition of appeal, upon which the decree of reversal was made in 1850, it was stated that "it appeared by the order of July, 1847, that the decree of January, 1835, had not been complained of, and that their Lordships had not made any declaration with respect to it," and that it "had never been adjudicated upon by their

Lordships." There had been no appearance by respondents since the refusal of an allowance of appeal in 1839, and since then appellant's proceedings had been *ex parte.* The decision of the House of Lords in 1853 on the second petition was that the judgment of reversal of 1850 had been obtained by suppression and misrepresentation, and the order allowing the appeal upon which it was rendered, were vacated; and the Lord Chancellor, in advising the House of Lords, makes the following observations: That the quoted words of the second petition of appeal were "a complete misrepresentation, * * a fencing or quibbling in a way which your Lordships will never permit to any suitor at your bar, * * it is not in any sense true to say that it appears by the order that it, 'the decree of 1835,' was not complained of. All that can be said is that the order is silent about it, if you can treat it as being silent when it dismisses in terms the appeal which did in fact include that decree as a subject matter of complaint. It appears to me it was a statement well calculated to mislead your Lordships. * * Although in any question decided by this House on appeal the matter is finally settled by the litigant parties, it is always subject to this condition, that if one party has by any misrepresentation, I will not put it so high as to say by fraud, for I do not wish to use harsh terms, but, if by misrepresentation, inadvertently (if you will) introduced, a party has led the House into an error, has led it to suppose that some-

thing is going on irregularly, all the commonest principles of justice compel this House, as they must compel any other tribunal, to interfere to prevent its own decisions from being made the machinery for effecting fraud, or the machinery for effecting that which, if not done *per incuriam*, would have been a fraud."

Where a case has been heard upon its merits in an appellate court according to its rules of practice, and the judgment of the court has been correctly entered, and, the time, if any, allowed by statute or its rules for a rehearing having passed, and, no application for a rehearing having been made, the *remittitur* issues and is lodged in the lower court, it may well be said that the appellate court has lost its jurisdiction of the cause, and has not power to recall or reconsider it. Under these circumstances it has fairly and duly exercised its appellate functions and exhausted its powers as to the cause. There must be an end of litigation; public policy, as well as the interests of individual litigants, demands it, and the rule just announced is indispensable to such a consummation. There are many such cases: King vs. Ruckman, 22 N. J. (Eq.), 551; Putnam vs. Clark, 35 *Ibid*, 145; Browder vs. McArthur, 7 Wheaton, 58; *Ex parte* Story, 12 Peters, 339; Martin vs. Hunter's Lessee, *supra*; still they are not in conflict with those in which jurisdiction is held not to have been lost, nor do they fail to recognize this fact or the principles upon which the other decisions

are founded. Illustrative of this is King vs. Ruck-
man, where, at a preceding term, the cause had been
argued and decided and the *remittitur* sent down, and
a motion for a rehearing was applied for at a subse-
quent term. The decision of the court was that after
a cause has been heard upon the merits, and the judg-
ment properly entered and the papers remitted to the
court below, the Court of Errors has no further juris-
diction with respect to the case. "It is not pretended,"
says the opinion, "that the judgment has been taken
through deception or mistake, * * and, referring
to Tommey vs. White, *supra*, as a case in which the
final decree had been revoked by the House of Lords
on the ground that it had been procured by deception,
it is said : 'In the practice of this court, therefore, it
seems clear that an error in a decree or judgment oc-
curring from fraud or mistake will be rectified. * *
I have no doubt that this court has the power at any
time to amend its judgment if it is erroneous by reason
of a misentry of the clerk, or by reason of any other
mistake, or that such judgment may be set aside and
treated as a nullity if it has been procured by fraud or
is the result of misapprehension.' "

The case before us is one in which a judgment of re-
versal has been rendered, and improvidently, through
mistake, and has been obtained upon a false sugges-
tion ; our decision of it is the result of misapprehension
and of an imposition upon the court. A false repres-
entation of the record of an inferior court has been

brought here in the form of a transcript, duly certified as a true representation of the original, and we have exercised appellate jurisdiction upon it, believing that it was a correct representation of that record, or, in other words, of the case as it appears in the lower court, but now it is shown that, instead of speaking the truth, it is a falsification, and that no such case is or has been there for review by us. It is not pretended that the Attorney-General had any suspicion of the falsehood. It is not *required* of him that he shall ordinarily regard the mere features of a transcript upon which questions of the legality of procedure may be raised, as grounds of suspicion of the correctness of the transcript, and, in response to such suspicion, to make inquiry of the clerk before submitting the cause. He does not participate, except upon the written request of the Governor, in trials at *nisi prius*, and usually has no source of information except the transcript. It is also immaterial that the counsel for a prisoner is not charged with the duty of seeing that the records of conviction are correctly entered against his client ; still, where the record has been entered as showing the prisoner's personal presence at the trial, in the manner appearing from the new transcript before us, the prisoner and his attorney are charged with the duty of bringing to the appellate court a correct or truthful transcript of that record ; Horne vs. Carter's Admin., 20 Fla., 45 ; Simpson's Admr., vs. Barnard, Adams & Co., 5 Fla., 528 ; Bridger vs. Thrasher,

22 Fla., 383 ; and no advantage can be gained from any action of this tribunal upon an untruthful representation of that record, however ignorant the convict or the counsel may be of the real status of the record, or of the incorrectness of the transcript, and however free from blame the clerk may have been in the mistake characterizing his transcript and certificate. It is of no moment that, as is the case here, there has been between the clerk and the prisoner, or the clerk and the prisoner's counsel, no fraud or collusion, nor suspicion, nor suggestion of either, in the preparation of the transcript, or in the certificate thereof ; and that neither the prisoner, nor his attorney, nor any representative of the prisoner, had anything to do with the preparation of the transcript, other than to ask for it ; and that the issuance of the *remittitur* was entirely regular. The fact still remains that a false record has been brought here on behalf of the convict and a reversal has been obtained in his behalf on it, such reversal being based solely upon its false feature ; and this fact is not changed, nor its result modified, by the innocence of the prisoner, his counsel, and the Attorney-General, but the extent of the imposition, and of the mistake, is only made the greater. To attempt to take any advantage from the judgment thus obtained would, in view of the innocence of the State, be an attempt at fraud upon the State, and we do not see that it would not be an imposition upon the court, and a fraud upon its jurisdiction, however innocent the mis-

take upon the part of each and every person connected with the cause, or the obtaining or preparing of the transcript. The appellate jurisdiction of this court is to be exercised over the tribunals subject thereto, only in the causes actually decided by them, and as such causes are shown by their records to be ; Pearce & Son vs. Jordan, 9 Fla., 526 ; Darden vs. Lines, 2 Fla., 569 ; Price vs. Sanchez, 8 Fla., 136 ; City of Jacksonville vs. Lawson, 16 Fla., 319 ; Irvin vs. State, 19 Fla., 872 ; Zinn, Aldrich & Co. vs. Dzialynski, 14 Fla., 43 ; and it will never permit itself to be misled, by mistake or otherwise, into acting upon any of those tribunals except through the very cause as it may have been decided there and is shown by its records ; and when it discovers, as here, that it has thus been misled it will not hesitate to undo the improvident work, however innocent all parties interested may be. The anomalous and mischievous conditions which would arise from a departure from this rule are palpable. The consideration, or reversal, or affirmance, of a judgment or decree upon a misrepresentation of the record of the cause, or upon anything else than the true record of that cause is entirely outside of the functions or purposes of an appellate court.

This case is, in our judgment, clearly within the rule which preserves our jurisdiction of it. We have been misled into reversing a judgment on a false record, into acting in a cause when that cause, as it really is and only can be acted on by us, has not been before us. In law, the writ of error issued in the cause is, in so far

as our exercise of our powers is concerned, still before us, and will be until that cause, as it really is, shall be decided, or the writ dismissed on legal grounds. Ostensibly it has passed from us, but only through the means of a misrepresentation, and by the decision of a case which is not shown by the real record, and does not exist; in the eyes of the law, however, decisions or judgments obtained in this manner are not binding on us.

In coming to the above conclusion we have not been unmindful that the State is the actor in the motion, nor failed to ask ourselves if there is in the fact that the cause is criminal in its character, anything which precludes the Commonwealth from making such a motion. We are aware that this court has decided that the State is not entitled to a writ of error to reverse the judgment of the Circuit Court quashing an indictment and discharging the accused; State vs. Burns, 18 Fla., 185; and that the current of authority, in the absence of legislative grant to the contrary, is that the State is not entitled to an appeal or writ of error to a judgment of acquittal in a criminal cause, for even the mere purpose of settling questions of law. The provision of our Constitution, that no person shall be twice put in jeopardy for the same offense (sec. 12, Declaration of Rights), does not escape our attention; we also know that it is not the practice for the State to apply for a rehearing here in a criminal cause on account of any error of the court; if any such application has ever been made we are not aware of it; and we certainly assume for the purposes of this decision

that such an application is not tenable. Still we find nothing in these considerations that seems to preclude the action now being taken by the State. It is not attempted even to review any judgment on account of an error of the court ; for no error has been committed by it ; the only thing attempted is to set aside that which, though in the form of a judgment, is, because of the circumstances under which it was obtained, in law, not the judgment of the court upon the true case of the plaintiff in error. It is an entry obtained under circumstances of misrepresentation, for which the plaintiff in error and those acting for him must, in so far as our powers and duties are concerned, be held responsible, and on which the law does not contemplate that we should ever act, and on which we would not have acted had we known of the misrepresentation ; and for which blame or laches are not imputable to the State. The State's judgment in criminal causes can not be the subject of review in this manner ; they can be brought in review only upon the records of them, and not upon a falsification of such records ; and the State is not prohibited by any principle of law known to us, from arresting the reversal which has been made of her judgment upon such false representation. She is entitled to require the party seeking relief from such judgments to bring to the appellate court the record of the cause in which it was obtained, for without this, that cause is not before the appellate tribunal for consideration. Any other doctrine than this must result in the frequent consummation of fraud upon the courts. and its constant encouragement.

Our conclusion is, that the judgment of reversal should be vacated and the cause reinstated on our docket. Whether there may not be cases in which a party would be estopped by his conduct, or by that of his counsel, from claiming benefit from a mistake of this character, is not before us for decision. The circumstances of this case exclude any expression on such point.

The entry of the judgment of reversal heretofore rendered will be vacated, and the cause recalled and restored to our docket for further proceedings, including an application for a *certiorari* in accordance with the rule of practice governing in such cases.