## STATE v. MARSH.

(Filed October 20, 1903).

CERTIORARI—*Supreme Court—Rape—Appeal.*

> Where a criminal case is decided in the supreme court on a record afterwards found to be false, it will be restored to the docket and a *certiorari* issued to correct the record.

DOUGLAS and WALKER, JJ., dissenting.

This was a MOTION by the State to restore this case to the docket and for a writ of *certiorari* herein.

*Robert D. Gilmer, Attorney-General,* and *Adams & Jerome,* for the State.
*Armfield & Williams, Redwine & Stack,* for the defendant.

CLARK, C. J. This case was before us at last term, *State v. Marsh,* 132 N. C., 1000. There were numerous exceptions, none of which were considered because a motion in arrest of judgment was made and allowed for the absence from the indictment (for rape), as sent up in the record, of the words "against her will." This objection was not taken below. It now appears by the inspection of the indictment by the Judge below, and his finding of fact thereon, that those words were in fact in the indictment as found by the grand jury, and upon which the prisoner was tried, and were omitted by the Clerk in making up the record. This case has heretofore not been before us, and the State asks for the

STATE *v.* MARSH.

correction of the indictment by a *certiorari* to insert the words omitted by the Clerk, and that the case may be argued upon the record and the exceptions taken at the trial.

If this were an application to rehear a criminal cause the Court would not entertain it. *State v. Council,* 129 N. C., 511, and cases there cited. A rehearing is based on an allegation that the Court committed an error of law in the previous opinion, and asks the reconsideration of that opinion. It is an appeal from the Court to itself on the ground of error in its rulings of law, just as an appeal is taken from the Superior Court. Here there was no error of law. The decision at last term is correct as the record stood. This is a motion to correct the record to speak the truth and to place the true record before us for the first time, and to consider the exceptions taken, they not having been passed on.

The same point, after similar action upon an untrue record caused by the false certificate of the Clerk of the lower Court, has been passed upon by the Supreme Court of Florida and the motion to restore the cause to the docket allowed. *Lovett v. State,* 29 Fla., 384, in an able and well-considered opinion by *Chief Justice Rainey.* In that case a new trial had been granted on the ground that the record in a trial for murder did not show that the prisoner was personally present at the trial. Subsequently, it being made to appear to the Court that the record did show such fact, but that such paragraph had been omitted in the transcript by the Clerk, the Court ordered *certiorari* to correct the omission and restored the cause to the docket for argument upon the exceptions taken at the trial, and it was so heard upon the true record, 30 Fla., 142. The same power is vested in this Court by section 8, Article IV of the Constitution, which gives it power to issue any remedial writ necessary for a general supervision and control of the lower courts. Instances of supervision to in-

sure justice are *Biggs Ex parte,* 64 N. C., 202, and *State v. Jefferson,* 66 N. C., 311.

In *Lovett v. State,* 29 Fla., 384, above cited, the Court said, pp. 404, 405, 407: "No advantage can be gained from any action of this tribunal upon an untruthful representation of that record, however ignorant the convict or the counsel may be of the real status of the record, or the incorrectness of the transcript, and however free from blame the Clerk may have been in the mistake characterizing his transcript and certificate.   *   *   *   The fact still remains that a false record has been brought here on behalf of the convict and the reversal has been obtained in his behalf upon it, such reversal being based solely upon its false feature; and this fact is not changed, nor its result modified, by the innocence of the prisoner, his counsel, and the Attorney-General, but the extent of the imposition and of the mistake is only made the greater.   *   *   *   We have been misled into reversing a judgment on a false record, into acting in a cause when that cause, as it really is and only can be acted on by us, has not been before us.   *   *   *   The State is not prohibited by any principle of law, known to us, from arresting the reversal which has been made of her judgment upon such false representation.   She is entitled to require the party seeking relief from such judgment to bring to the appellate court the record of the cause in which it was obtained, for, without this, that cause is not before the appellate tribunal for consideration. Any other doctrine than this must result in the frequent consummation of fraud upon the courts, and its constant encouragement"; and at page 395 the *Chief Justice* says that when the judgment has been granted "upon a false suggestion, or under a mistake as to the facts, the Court will afford relief after adjournment of the term, and, if necessary, recall the *remittitur* and stay proceedings in the Court below."

Mistakes of this Court or of its Clerk, not mistakes of law

but of fact, have often been corrected after the mandate has gone down, and even at subsequent terms. *Scott v. Queen,* 95 N. C., 340; *Cook v. Moore,* 100 N. C., 294, 6 Am. St. Rep., 587; *Summerlin v. Cowles,* 107 N. C., 459; *Scroggs v. Stevenson,* 108 N. C., 260; *Barnhardt v. Brown,* 118 N. C., 710, 36 L. R. A., 402. For as strong a reason this Court can order a correction of a record below, when by reason of the false or erroneous certificate of the Clerk the record, as it was, has never been before us. This is not new practice. "Upon a judgment of the King's Bench, if there be *error in the process or through defaults of the clerks,* it may be reversed in the same court; for error in *fact* is not error of the judges, and reversing it is not reversing their own judgment." 2 Tidd's Prac., 1137. *Also, Ins. Co. v. McCormick,* 20 Wis., at p. 284, where it is said that "the errors are not errors in the judgment itself. The Court in rendering judgment never passed upon them."

In this case the Court, through error for which the appellant is responsible (for it was his duty to bring up a true record), has taken action on a bill of indictment on which the prisoner was not tried, and on nothing whatever that took place at that trial. We are not asked to reverse our judgment but to correct an *error of fact.* The prisoner brought up the record. He presented us, as an alleged error, a statement of a matter which was false. The record he presented stated that the indictment on which he was tried omitted the words "against her will." He relied upon that omission and asked an arrest of judgment on that account. We allowed it *solely on that account.* He has no ground to ask to benefit by that untrue statement in the record he presented to us, and it is immaterial that it does not appear how the omission came to be made. The case has never been before us.

In civil cases counsel on both sides have opportunity to scan the whole record carefully, and if there is omission or other

error ordinarily a *certiorari* can and should be applied for before the cause is called for argument. But in criminal actions the rotating Solicitor has no opportunity to see the record proper, nor any part of the transcript except "the case on appeal" served on him, and does not see even that after the Clerk copies the case "as settled." When, as here, there was no point made below on the bill of indictment, the indictment made no part even of the "case on appeal" served on the Solicitor. There is no provision of law nor any practice requiring Solicitors to go back to the county-seats, nor to have full transcripts of the record sent them before coming up to this Court. The Attorney-General is bound to rely upon the correctness of the record laid before him. He was not at the trial below. If, therefore, a Clerk can omit material parts of the indictment, and the defendant, notwithstanding the duty is on him to bring up a true record, can profit by this error of fact (whether intentional or unintentional could rarely if ever be shown), new trials will depend not upon the correct rulings of the Judge below, but upon the greater or less carefulness of the Clerk, or of the copyist, often furnished him by the appellant. It is not sufficient to say that the appellant can be again put on trial. There is the expense to the public of another trial, and witnesses may have moved away or died. The State is entitled, in the interest of justice, to have the cause presented here on the record as the matter was presented below, and it is the duty of the appellant to bring up such true record. When there is a fatal misstatement of fact therein, appellants must understand that their negligence in presenting a false record (to put it in the mildest form) cannot avail them any more than if they had made the omission fraudulently, which can never be shown. In *State v. Daniel,* 121 N. C., 575, the Court said that the defendant "was derelict in not sending up a proper transcript, and the Court would not permit him a continu-

STATE v. MARSH.

ance of the cause for his own neglect, but would send down *ex mero motu* an *instanter certiorari* to cure the defect in the transcript." If the Court will not allow an appellant a continuance, even for omissions or error in the record, it will certainly not permit him to enjoy a new trial by reason of such default by him.

In England a defendant in criminal cases is allowed no appeal. We allow an appeal, but the burden is on the appellant to assign his errors and bring up a true record. When he fails to do either, he cannot take profit from his omission of duty.

The Judge below having from inspection of the record found that the indictment on which the appellant was tried in fact contains the words "against her will," and that being already certified to this Court, the record here can be amended to include them, as upon *certiorari,* and the cause will be restored to the docket to be heard in its order upon the exceptions taken below when the district to which it belongs is called, unless for cause shown it is placed at the end of the district or at the end of the docket for this term.

It does not appear that the words were omitted by the fraud of the appellant or of any one for him. If it did, the appeal should properly be dismissed. The motion to restore the cause to the docket is allowed.

Motion allowed.

WALKER, J., dissenting. The defendant was indicted in the Court below for the crime of rape, and, having been convicted, appealed to this Court. At the last term we arrested the judgment upon the ground that there was no allegation in the indictment that the offense had been committed "against the will of the prosecutrix." 132 N. C., 1000.

The opinion of this Court was filed on 31 March, 1903, and the certificate was sent to the Superior Court on 1 May,

1903, so that the case was retained in this Court, under the rule, for the purpose of correction, a full month before it was returned to the lower court. This Court adjourned for the term on 11 June, 1903, and it appears, therefore, that the State had ample opportunity, after the filing of the opinion and before the adjournment at the last term, to have called the alleged error or defect in the transcript to our attention. But it failed to do so. The State is not entitled to any more consideration or indulgence in this Court in respect to the trial of cases in which it is concerned than other litigants, except that the causes in which it is a party may be advanced sometimes when they affect the public interest and a speedy hearing is desired. It is bound, however, by the same rules of practice and procedure and must give the same attention to its cases and exercise the same degree of diligence as other parties. *State v. Price,* 110 N. C., 599. In *State v. Cameron,* 121 N. C., 572, we held that "the law which regulates the matter of appeals is the same in both civil and criminal cases," and that, "in criminal appeals the respondent is the State represented by the Solicitor of the district in which the case is tried," and that he is as much the representative of the State in all matters pertaining to the preparation of cases in all respects for transmission to this Court as is an attorney of record the representative of his client in a civil case. There is no duty imposed upon an attorney in a civil suit with respect to the settlement of the case on appeal and transmission of a transcript of the record to this Court that does not equally rest upon the Solicitor in an appeal taken in a criminal case. The only difference between the two classes of cases is one which does not materially affect the question we are now discussing, and that difference is that in a civil case the appellant must pay the fees of the Clerk for making out the transcript in advance, if he demands it, while the State is not required to do so

when it appeals; but the appellant in a civil case is no more
bound to see that the record is correctly copied and trans-
mitted to this Court than is the State in a criminal case.
The duty of copying and transmitting the record is one
which, as this Court has frequently decided, appertains to
the office of the Clerk.    It is his official duty to send up a
perfect transcript, and not in any sense the duty of the appel-
lant, except as hereinafter stated, in any kind of case.    This
is made perfectly clear in *State v. Butts,* 91 N. C., 524-526.
In that case it is said by the Court that while "it would be
well for counsel to see that transcripts are properly made up
before they come to this Court, in order to protect the in-
terests of their clients, yet it is the official duty of the Clerk
to see that a true and perfect transcript is sent to this Court.
It may be conceded that if the record is defective the appel-
lant in a civil case will not be allowed a continuance in order
to have it perfected, or indulged in any other way with
respect to it, and if the defect is one that will injure his
client if not corrected he must abide the consequences of his
neglect or omission in not having the record made perfect.
He must apply for the necessary process for that purpose in
apt time.    While this is the rule in civil cases, it also obtains
in criminal cases as to both parties to the record, the State
and the defendant.    When it is said to be the duty of the
appellant to see that the record is correctly certified to this
Court, nothing more is or can be meant than that if the record
is not here at the proper time his appeal will be dismissed,
or if the record is defective and he does not move in apt time
to have it corrected the case must be heard just as if the
record was perfect in form, and the party in default must
take the consequences of his neglect.    Surely the appellee
cannot avail himself of a defect which defeated him in the
case and then apply for and obtain a writ of *certiorari* after
the adjournment of the term upon the ground that the appel-

lant failed himself to apply for the writ. That would be
to permit the appellee to take advantage of the laches of his
adversary where he unreasonably relied upon him to look
after and care for his interests in this Court. If in a civil
case a plaintiff (appellee) should permit his case to be argued
and decided in this Court without having called our attention
to a defect in the record, for example, the careless or inadver-
tent insertion of a material allegation in his complaint so that
it would appear he has no cause of action, and, by reason
thereof, the judgment is arrested or the action dismissed,
would he be heard at the next term to allege the defect and be
granted a writ of *certiorari* so that the case could be reheard?
The mere statement of the proposition carries with it its own
sufficient refutation. How, then, can the State, who occupies
substantially the same position in this Court as the plaintiff
(appellee) in a civil case and is subject to the same rules, be
allowed to do so when the indictment as certified to this Court
is defective? If it is allowed in the latter case there is no
sound reason why it should not be in the former, unless there
is something in the mere sovereignty of the State or her pecu-
liar prerogative which gives her rights and privileges in this
Court not enjoyed by a citizen, and no such claim was made
by our learned and able Attorney-General, who lets no point
escape him, and it is not even suggested in the opinion of the
Court. The Supreme Court of the United States has ruled
that the Government, when it comes to the Federal Courts to
litigate with one of its citizens, must submit to the rules of
practice and procedure of its courts, and its rights and privi-
leges at every stage in the trial of the cause are substantially
in every respect the same as those of the citizen, and it cannot
have any superior advantages. *Fink v. O'Neill,* 106 U. S.,
272; *U. S. v. R. R. Co.,* 105 U. S., 263; *U. S. v. Thompson,*
93 U. S., 586; *Carr v. U. S.,* 98 U. S., 433; *Sibbald v. U. S.,*
12 Pet., 489.

When it is conceded, as it must needs be, that the State and its citizens stand before this Court on terms of perfect equality, and that right and justice under the law must be administered in the same way to each of them, the fallacy of the reasoning by which the conclusion of the Court is reached and its insufficiency to justify that conclusion is clearly seen, unless we propose to overrule many cases heretofore decided in this Court in which it has been held that parties must be diligent in applying for remedial writs for the purpose of perfecting the transcript and that an application for a *certiorari,* upon the suggestion of a diminution of the record, cannot be made after the term to which the appeal is taken and at which the case is decided, and not even at that term unless it is made before the argument commences.    A complete reversal of this wise and safe rule is the logical result of the decision in this case; but a consequence more dangerous in its tendency may follow, for no limit of time is set by the ruling of the Court for such an application to be made.    If it can be made at the first term after the one at which the case is decided, why not at the second term and so on without limit?    It will not answer the argument to say that in the Court below the State is represented by one officer, the Solicitor, and in this Court by another, the Attorney-General, for the duty of looking after the interest of the State in the lower Court, where the transcript is prepared and from which it is transmitted, devolves solely upon the Solicitor, as we have seen, unless he is assisted by private counsel, as in this case, or unless he specially appoints some other member of the Bar to represent him, which appointment must be made in the manner pointed out by this Court.    *State v. Cameron, supra; State v. Clenny,* 133 N. C., 662.    In the case last cited, *Montgomery, J.,* for the Court, says: "The Solicitor, as we have said in *State v. Cameron,* represents the State in criminal prosecutions, and the statement of the case

134——13

on appeal in such cases should be submitted to him for accept-
ance or objection." It appears, therefore, that he is as fully
invested with plenary power and authority in all matters af-
fecting the State's interests, with the corresponding duty of
taking care of those interests, as the attorney of a party in a
civil case. If there is a duty resting upon the latter to ex-
amine the transcript of the record before it leaves the hands
of the Clerk, the same duty rests upon the Solicitor, and the
consequence to the State must be the same if this duty has
not been performed in a criminal case as it would be to a
party in a civil case if the duty is neglected by him. There
is no greater obligation imposed upon an appellant to examine
a transcript than there is upon an appellee, in so far as the
party in default may be injuriously affected in this Court.
The same diligence is required of the appellee as of the appel-
lant in discovering defects and having the record perfected.
If there is an omission of matter material to his case, and the
appellee fails at the proper time to seek the remedy for sup-
plying it, he must suffer the consequences just in the same
way and in the same degree as the appellant. I must deny
the correctness of the proposition impliedly asserted in the
opinion of the Court that any positive legal duty is devolved
upon an appellant or an appellee to see that a true and perfect
transcript is sent to this Court, and that his failure to do so
will be imputed to him as a fraudulent or even a false repre-
sentation to this Court, if the transcript is defective or is
other than a perfect copy of the record below. He makes no
representation to this Court, but simply relies, as he has a
perfect right to do, upon the Clerk, whose duty it is to certify
the transcript. The appellant's duty is fully performed
when he has caused the case on appeal to be settled and filed
with the Clerk and paid the latter his fee for sending up the
transcript to this Court. There his duty ends and that of
the Clerk begins, with this possible qualification, if it is a

STATE *v.* MARSH.

qualification, that, if the record as certified by the Clerk happens to be defective and the appellant fails to have it corrected in due time, so that he loses in this Court, he must bear the loss just as the appellant must do if the defect causes him to be cast in the suit and he has not taken the proper means to have it remedied. It follows from what I have already said, that neither the defendant's counsel nor the Solicitor was in the least derelict in his duty, as both had the right, if they chose to do so, to rely upon the Clerk, who is the custodian of the record and the officer appointed by the law for the purpose of preparing and transmitting a perfect transcript of it to this Court, and it is not infrequently the case that counsel and the Solicitor thus rely, as they each have a perfect right to do, upon the Clerk to perform his duty in the premises. But if the Clerk fails by mere inadvertence or oversight to make a true copy, the defect may be cured by applying to this Court for the proper writ in apt time, that is, at the term to which the appeal is taken, and the consequence of the failure to make this application will fall upon him who is prejudiced by it and who fails to take the necessary steps to protect his interests. This must be so in all cases. I am not denying or questioning the power of this Court to correct its own records in order to make them speak the truth. That power is fully conceded, but it is not the one which is being exercised in this case. This Court may not only amend its own records at any time, but it may supply any defects in the transcript sent to it from the lower courts by issuing the proper remedial writ, provided it is done upon seasonable application of a party or of its own motion within the time allotted by law. · It has been uniformly decided by the Court that an application for a writ of *certiorari* for the purpose of correcting a record must be made, except in rare cases, before the cause is submitted for argument (*McDaniel v. Pollock,* 87 N. C., 503), and in no case can the writ issue after

the expiration of the first term; and especially is this so when the case has 'been decided and not merely continued at that term. *State v. Blackburn,* 80 N. C., 477; *State v. Harris,* 114 N. C., 830; *State v. Rhodes,* 112 N. C., 857. In the cases cited it is held that if a party has good ground for a *certiorari,* he must move for it at least before the argument upon the merits, and if he fails to do so he must abide the consequences of his own neglect, although he may be able afterwards to show by proof ever so conclusive that there is a material defect in the record and one, too, which would reverse the decision of the Court. There must be an end to litigation somewhere. No man should be permitted to prolong it by his own neglect and thus to profit by his own wrong. But I think the precise question has been decided by the Court in *Wilson v. Lineberger,* 84 N. C., 836. In that case the plaintiff's counsel moved to correct the record at the term next after the case was heard and decided, with the intention of asking for a rehearing. *Smith, C. J.,* for the Court, said: "The motion is a novel one and without precedent in the practice of the courts. If the evidence shall change the aspect of the case and make it materially different from what it was when heard, we should be required not to *rehear and correct an error of law but to try a new case.* If there is an error in the former decision, it must be discovered in the case then presented without modification of facts." And again: "It was the duty of counsel to suggest the diminution before the cause was heard and then ask for this remedial process, not to wait till the decision and then demand it. It would be productive of much mischief to relax the salutary rule which requires counsel to see that their' cause is properly before the Court in the record, and to abide the consequences if it is not." The Court did not confine its decision in that case to the particular character of the amendment required, but simply applied the general principle that

no amendment of any kind can be made at a subsequent term so as to present a question different from that appearing in the original record. The Court well said that it would introduce a novelty into the practice and procedure of the Court which would be productive of untold mischief and incalculable harm.

When this Court has decided a case and the opinion and judgment have been certified to the Court below, its jurisdiction with respect to the case is at an end, at least when the Court has adjourned for the term at which the decision was made. The terms of this Court are fixed by law (Constitution, Art. IV, sec. 7; The Code, ch. 24, sec. 953; Acts 1887, ch. 49; Acts 1901, ch. 660) in the same manner as are the terms of the Superior Court, and when, under the statute, this Court has finished the business of any one term and adjourned, its jurisdiction of a case decided at that term ceases, and it cannot again acquire jurisdiction of it, except by petition to rehear under the established rule of the Court, or by a new appeal. In discussing this question the Court, in *White v. Butcher*, 97 N. C., 7, says: "The remand arrested further action here at this point. * * * The practical result to be secured was the conveyance of the title to the property, as would have been the case here had the jurisdiction over the cause been retained. But it was no longer in this Court for any further order, unless, perhaps, the transmission of the papers and transcript; but the neglect to transmit them did not retain the cause itself after the order, nor impair the efficiency of the order."

In *Ruffin v. Harrison*, 91 N. C., 398, the Court, after stating the general proposition that a rehearing will not be granted upon a summary motion to modify a final judgment of this Court, proceeds: "The Court has no power to amend or modify the final decree, entered at the last term, upon an application like this. After final judgment the Court cannot

disturb it unless upon an application to rehear, or for fraud, accident or mistake alleged in an independent action, or, perhaps in some cases, a party might be relieved against a 'judgment, order or other proceeding taken against him through his mistake, inadvertence, surprise, or excusable neglect' within a year after the entry of the same.    *    *    *    This of course does not imply that the Court has not power to correct the entry of its orders, judgments and decrees so as to make them conform to the truth or what the Court did in granting them, or to set aside an irregular judgment in a proper case. The practical effect of granting the prayer of the petitioners would be to give them the benefit of a rehearing upon a summary application to change the final decree at a term of the Court subsequent to that at which it was granted. We are not aware of any rule of procedure or practice that warrants such action. The application must be denied and the petition in this respect dismissed." In regard to this subject, the Court, in *Cook v. Moore,* 100 N. C., 294, 6 Am. St. Rep., 587, says in this emphatic language: "It is not contended that this Court can reverse, set aside or modify in any material respect a regular final judgment at a term thereof subsequent to that at which it was entered. It is clear and well-settled that it has no such authority except upon an application to rehear, or because of 'mistake, inadvertence, surprise or excusable neglect, as may be allowed by statute.' " It will not of course be contended in the case at bar that this Court has the power to correct the judgment at the last term because of "mistake, inadvertence, surprise or excusable neglect." In *Moore v. Hinnant,* 90 N. C., 163, it is said: "But the Court has not the power at a subsequent term to revoke, set aside, alter or amend a final judgment entered at a former term except upon application to rehear, or because of "mistake, inadvertence, surprise or excusable neglect," as allowed by law. The exercise of such a power is forbidden by principle and

the overwhelming weight of authority, if indeed there can be any well-considered case that sustains it.   \*   \*   \*   It is a fundamental principle of the common law, as the authorities ancient and modern show, that the Court cannot change and modify its final judgments at a term subsequent to the term at which they were entered. During the term, the record, including the judgment, is *in fieri* and may be amended or set aside as to the Court may seem proper; but, after the term, the power to interfere with it no longer exists. This Court has seldom had occasion to refer to the subject of the power of a court of record to change its judgments after the term at which they were entered, but it has repeatedly incidentally recognized the doctrine that such power does not exist." It is also stated in *Moore v. Hinnant, supra,* that a judgment regularly entered, if not erroneous, can in no case be altered at a subsequent term otherwise than by a petition to rehear, except for the purpose of making the record express the intention of the Court at that time upon the record as then before it, so that it may speak the truth as to that record. In that case, from which I have made only a few brief extracts, *Merrimon, J.,* for the Court, goes fully into the question we have under consideration, and denies the existence of the power or jurisdiction now about to be exercised in this case, and concludes that it would give rise to "universal distrust, endless strife and confusion, and would violate the cardinal maxim that it is to the interest of the State that there should be an end to litigation." He quotes freely from Coke and Blackstone and supports the doctrine by the citation of numerous and weighty authorities. His quotation from Coke is an apt one: "During the terme wherein any judicial act is done, the record remaineth in the breast of the judges of the court and in their remembrance, and therefore the roll is alterable during that terme, as the judges shall direct; but when the terme is past, then the record is in the roll and admitteth no alteration,

STATE *v.* MARSH.

averment or proof to the contrarie." Other and numerous authorities in support of the position will be found collected in *Moore v. Hinnant* and *Cook v. Moore, supra.*

The case of *Rice v. Railroad,* 21 How. (U. S.), 82, it seems to me, is directly in point. In that case the record upon which the appeal was heard and decided failed to show that there had been a final judgment in the Court below, which was required as a basis of a writ of error to the lower Court. It was sought, at the term next after the decision, by writ of *certiorari,* to bring up and file a new record showing that there had been a final judgment, and to have the former judgment annulled and a rehearing granted. *Taney, C. J.,* for the Court, says: "We think the motion to annul the judgment of the last term and reinstate the case cannot be granted. The suit is a common law action for a trespass on real property, and the judgment of the Court below can be brought here for revision by writ of error only. That writ was issued by the plaintiff in error, returnable to the last term of this Court, and it brought the transcript before us at that term. It was judiciously acted on and decided by this Court, and when the term closed that decision was final so far as concerned the authority and jurisdiction of this Court under that writ. The writ was *functus officio;* and if the parties desire to bring the record of the case again before this Court it must be done by another writ of error." He then refers to the case of *The Palmyra,* 12 Wheaton, 1, which was cited in support of the petition to rehear, and says that it is not in point, as the appellate jurisdiction of the Supreme Court in admiralty cases is quite different from that in cases at common law, it being allowable in admiralty cases to amend the pleadings and take new evidence in the Supreme Court, "so as in effect to make it a different case from that decided by the Court below."

In *Sibbald v. U. S.,* 12 Peters, 492, the Court says: "No

STATE *v.* MARSH.

principle. is better settled, or of more universal application, than that no court can reverse or annul its own final decrees or judgments, for errors of fact or law, after the term in which they have been rendered, unless for clerical mistakes (in the appellate court), or to reinstate a cause dismissed by mistake, from which it follows that no change or modification can be made which may substantially vary or affect it in any material thing."

The doctrine is very strongly stated by the Court in *Bronson v. Schulten,* 104 U. S., 415, thus: "But it is a rule equally well established, that after the term has ended all final judgments and decrees of the Court pass beyond its control, unless steps be taken during that term, by motion or otherwise, to set aside, modify or correct them; and if errors exist, they can only be corrected by such proceeding by a writ of error or appeal as may be allowed in a court which, by law, can review the decision. So strongly has this principle been upheld by this Court, that, while realizing that there is no court which can review its decisions, it has invariably refused all applications for rehearing made after the adjournment of the Court for the term at which the judgment was rendered. And this is placed upon the ground that the case has passed beyond the control of the Court."

In *Bank v. Moss,* 6 How., 38, the Court said: "The action was not regularly on the docket at the new term following the one at which the judgment had been rendered when the Court undertook to set the judgment aside. The power of the Court over the original action itself, or its merits, under the proceedings then existing, had been exhausted, ended. This means the power to decide on it, or to change opinions once given, or to make new decisions and alterations on material points. A mere error in law, of any kind, supposed to have been rendered in a judgment of a court at a previous term, is never a sufficient justification for revis-

STATE v. MARSH.

ing and annulling it at a subsequent term in this summary way on motion. We would not be understood by this to deprive a court at a subsequent term of power to set right mere forms in its judgment, or of power to correct mistakes of its clerks. The right to correct any mere clerical errors so as to conform the record to the truth always remains."

A case directly in point is that of *State v. Dickson*, 97 Ind., 125, where it appeared from the record as sent to the appellate court that the indictment had not been returned into open court by the grand jury and the judgment was arrested. A motion was made for leave to amend the record by showing that the indictment had been returned into open court, and then for a rehearing of the case upon the record as thus amended. This is like our case in all respects. The Court said: "Counsel for the State accompany their petition for rehearing with a motion to have the Clerk of the Court below certify to this Court certain portions of the record alleged to be omitted in the transcript. No objection, so far as the record before us is concerned, is made to our decision. The settled practice of this Court forbids the correction of the record after a case has been decided." So in *Garner v. State*, 36 Tex., 693, after the judgment was arrested for lack of an essential averment in the bill, a motion similar to the one in this case was made and refused because the Court had lost its jurisdiction. In each of the following cases a motion was made at a term subsequent to that at which the judgment of the appellate court was entered to amend the record and rehear the case. In *Cruiser v. State*, 18 N. J. L., 209, the Court says: "These, it is true, are mere mistakes in form; they are clerical errors only; but I have searched in vain for any authority in this Court to amend or order amendment below after a writ of error in a criminal case. I cannot find a single case in which it has been done." It was said in *State v. Daugherty*, 59 Mo., 104, "If the record was incom-

plete or defective when the case was here on a former occasion, diminution should have been suggested and a rule obtained for sending up a perfect transcript. But the party submitted his case upon the record filed in the Court and the judgment rendered thereon is final, and whilst it remains unreversed it conclusively bars any further proceedings. If parties were permitted after a final judgment in this Court to go back to the Circuit Court, and there get an amended transcript and bring the case again here at their mere will and pleasure, there would be no final disposition of cases." So in *Fielden v. People,* 128 Ill., 599, it was said by the Court: "Amendments not in affirmance but in derogation of the judgment are not allowed at a term subsequent to that at which final judgment is rendered." And again, it is said: "This motion not having been made at the same term at which final judgment was rendered, not until the case had passed beyond the power of this Court to stay by its order the execution of the judgment, clearly comes too late." A strong case, and one also directly in point, is *Cory v. State,* 55 Ga., 239, in which the Court uses this language: "It is said that the Clerk, in copying the bill of indictment, made a mistake and wrote *'with'* when he should have written 'without the consent of the owner.' This may or may not be true. It has not been verified to us in the only way it can legally be done by a suggestion of a diminution of the record on or before the calling of the case. The Code, sec. 4282, Rule 9. Our only recourse is to adhere to the law and to rule on principle. It may sometimes work seeming injustice; a departure from it would open the flood-gates of speculation and unsettle the entire practice of the Court. In this case any wrong can be but temporary; the party can be tried again, and if found guilty on the second count properly framed he can be punished according to law." See also, *U. S. v. Adams,* 9 Wall., 557; *Christopher v. Searcy,* 12 Bush. (Ky.); 3 Cyc.

Law and Pro., p. 214, and note 16, where many cases are collected. The Court, in its opinion, relies very much on the case of *Lovett v. State,* 29 Fla., 384, 16 L. R. A., 313, but the case is not, in my opinion, an authority for its decision. In the first place, the motion in that case for a *certiorari* for the purpose of correcting the record so that there could be a rehearing of the case upon the amended transcript, was made at the same term at which the case was first heard and decided. This is sufficient to distinguish it from the case at bar. The Court merely recalled its *remittitur* while the case was, as it said, in its possession and within its control under the rules of practice, but even in doing that it went beyond what this Court had repeatedly decided to be the law in such cases. If the facts of that case were like those of the case we are considering, and the same point had been presented, the authorities cited in support of the decision would not, I think, sustain it. They are, in the main, cases in which the courts asserted the right to amend their *own* records so that they could be made to speak the truth. The case of *The Palmyra,* 12 Wheat., 1, on which that Court relied, was, as we have already said, a case in admiralty, and the Court gave its decision in it under the rules of the admiralty courts in such cases. But those rules do not apply to cases at common law. The Court, in *Lovett v. State,* concedes the general doctrine that after the appellate court has sent down its certificate or *remittitur* and adjourned for the term, it has lost its jurisdiction of the case, but not so if the motion for a *certiorari* is submitted during the term at which the decision is made. "Where a case has been heard," the Court says, "upon its merits in an appellate court according to its rules of practice, and the judgment of the Court has been correctly entered, and the time, if any, allowed by the statute or its rules for a rehearing having passed, and no application for a rehearing having been made, the *remittitur* issues and

is lodged in the lower court, it may well be said that the appellate court has lost its jurisdiction of the cause, and has not power to recall or reconsider it.   Under these circumstances it has fairly and duly exercised its appellate functions and exhausted its powers as to the cause.   There must be an end of litigation; public policy, as well as the interest of individual litigants, demands it, and the rule just announced is indispensable to such a consummation."   The Court also says: "It is apparent that the State's motion is made during the term of Court at which the judgment which it is sought to have revoked was pronounced and entered, and it is a general rule of the common law that courts have power either to modify or vacate their judgments and decrees during the term at which they were rendered or while they are *in fieri.*" Even in that case the Court relied largely upon decisions in civil cases in which the error or mistake occurred in the appellate court.   The case of *The Palmyra,* which was also cited by the Court and much relied on in support of its decision, has been fully explained and shown not to be an authority in support of the Court's ruling.

No suggestion of fraud upon the Court has been made in this case.   Indeed, the Attorney-General admitted there was no fraud but a mere inadvertence of the Clerk in copying the indictment.

My conclusion is that, on principle and authority, the Court is without jurisdiction to grant the relief prayed for by the State.   The decision of the Court, in my opinion, is in conflict with those cases in which it is held that a petition to rehear will not be entertained in a criminal case, and further establishes a new doctrine that a criminal case cannot only be reheard in this Court, but that the record may be amended for the purpose of a rehearing.   The remedy of the State is to send another bill.   To a new indictment the plea of former conviction cannot avail the defendant, though

STATE *v.* MARSH.

some doubt as to this seems to have been entertained in the Court below. In order to sustain the plea of former acquittal or former conviction, it must appear that the former judgment "still remains in full force and effect and not in the least reversed or made void." *State v. Williams,* 94 N. C., 891.

It is said in the opinion that by section 8, Article IV of the Constitution, this Court may issue remedial writs necessary for a general supervision and control of the inferior courts. This is admitted, but it does not follow by any means that they may be issued contrary to the well-established course and practice of the Court. In the two cases cited by the Court as illustrations of the proper exercise of this power, namely, *Biggs Ex parte* and *State v. Jefferson,* the writs were applied for in apt time and issued regularly and in strict accordance with the well-settled rules of procedure in this Court.

Again, the Court says: "That mistakes of this Court or of its Clerk, not mistakes of law but of fact, have been often corrected after the mandate had gone down and even at a subsequent term," and numerous cases are cited to sustain the proposition. Citations are not necessary for that purpose. The proposition is also admitted; but the deduction made from it by the Court I do not think is either logical or warranted. The citation from Tidd's Practice is, I think, a complete refutation of it. The correction, as Mr. Tidd said, must be made in the same Court where the mistake occurred. All the authorities cited by the Court in this connection simply refer to the familiar principle that a court may correct its own records so as to make them speak the truth. I venture to assert, with all deference, that there is not a single authority cited by the Court which, when properly considered and restricted to its peculiar facts, sustains its conclusion or which conflicts with the numerous cases decided by this

Court, and which I have already cited in support of the view I have taken of this case.

My deliberate conviction is that the ruling of the Court introduces a new and dangerous precedent into its practice and procedure, and unsettles those decisions in which the right to rehear in criminal cases is said not to exist.

The motion of the State, in my opinion, should be denied.

DOUGLAS, J., dissenting. I fully concur in the able dissenting opinion of *Justice Walker* which leaves but little for me to say; but there are some parts of the opinion of the Court on which I will briefly comment.

The Court says: "We are not asked to reverse our judgment, but to correct an *error of fact.*" I do not so understand it. In the first place, we have no power at any time to correct a fact found in the Court below, and even if we give the Clerk of the Court below any opportunity to correct the record sent up by him, it would do the State no good as long as our judgment remains arresting the judgment in the Court below, which in this case would be equivalent to granting the defendant a new trial, as a new bill of indictment could have been sent against him. The motion of the Attorney-General to correct the "error of fact" is simply preliminary to his further motion to *rehear* the case on the record as so amended. If the Attorney-General had simply asked to have the error of fact corrected in the record without disturbing our judgment, I would not have dissented so strenuously. But when he asks us, after the expiration of the term at which the defendant has been granted an arrest of judgment, to take him back, reverse our judgment and hang him under an old sentence legally set aside at a former term, I must emphatically dissent. It is true upon the rehearing of the case this Court granted the defendant another new trial upon a different ground, but that does not cure the invalidity in the rehearing

itself.   Suppose that the prisoner had been again tried and
acquitted upon a new bill pending the rehearing, and upon
the rehearing this Court had found no other ground of error,
would it have been our duty to have affirmed the judgment
and sentence of death?   This would have been a greater vio-
lation of the letter of the law than the execution of Sir Walter
Raleigh, who was executed fifteen years after sentence upon
a judgment which had, however, never been formally re-
versed.   The opinion does not call it a rehearing, but what
else is it?   Taking the facts as they are, what other name
can we apply to it?   The case is taken back and reconsidered
and a new judgment rendered.   I do not mean to say that
this case could properly be reheard.   On the contrary, not
a single requisite exists for a rehearing, even if this Court had
not decided in *State v. Council,* 129 N. C., 511, that petitions
to rehear are not allowable in criminal actions.   It may be
asked why, having dissented in Council's case, I should also
dissent in the case at bar, which practically overrules every
principle underlying the decision in Council's case.   I do so
for the sufficient reason that, even admitting that the State
is entitled to a rehearing, it has complied with none of the
requisites prescribed by the rules of this Court.   Moreover,
the opinion of the Court cites Council's case with approval;
and it is impossible for both decisions to be right under the
same system of jurisprudence.   If we cannot rehear a case
to do justice to the prisoner by correcting our own error, we
surely cannot rehear it simply to hang him.